(No. 47152

GARY DAVIS v. COMMONWEALTH EDISON CO. *et al.*—(Bonesz, Maas & Buccola, Appellant, v. J. A. Boulton & Co., Appellee.)

*Opinion filed Sept. 26, 1975.—Rehearing denied Nov. 21, 1975.*

Lord, Bissell & Brook, of Chicago (C. Roy Peterson and Hugh C. Griffin, of counsel), for appellant.

Kralovec, Sweeney, Marquard & Doyle, of Chicago (Charles V. Kralovec and Edward V. Scoby, of counsel), for appellee.

MR. JUSTICE WARD delivered the opinion of the court:

On August 15, 1972, the plaintiff, Gary Davis, a steel worker, was injured while working at a restaurant construction site in Prospect Heights. He suffered severe burns and shock when the boom of a crane, which was located in an area adjacent to where he was working, came into contact with electrical transmission wires. The plaintiff filed a complaint in the circuit court of Cook County naming 17 defendants, including the architect, Bonesz, Maas & Buccola (hereafter Bonesz), and the general contractor, J. A. Boulton & Co. (Boulton). The complaint alleged that Bonesz and Boulton, *inter alia,* violated the Illinois Structural Work Act (Ill. Rev. Stat. 1971, ch. 48, pars. 60 through 69) through their "faulty erection, operation and placement" of the crane. The defendant Bonesz brought a cross-complaint against Boulton, and other defendants, seeking indemnity from Boulton for any judgment which might be gotten against Bonesz on the

plaintiff's complaint. In count II of the cross-complaint, Bonesz claimed a right to indemnification from Boulton, based on a contractual provision that obligated Boulton to pay all claims or judgments for any injuries, whether caused by Bonesz's negligence or not, arising out of the construction of the restaurant, including all claims or judgments under the Illinois Structural Work Act. Boulton moved to be dismissed from the cross-complaint, arguing that the indemnity agreement set out in count II was void as against public policy because of an "Act in relation to indemnity in certain contracts" making void any agreement indemnifying one against his own negligence in construction contracts. Section 1 of the statute provides:

"With respect to contracts or agreements, either public or private, for the construction, alteration, repair or maintenance of a building, structure, highway bridge, viaducts or other work dealing with construction, or for any moving, demolition or excavation connected therewith, every covenant, promise or agreement to indemnify or hold harmless another person from that person's own negligence is void as against public policy and wholly unenforceable." Ill. Rev. Stat. 1971, ch. 29, par. 61.

The circuit court held that the statute prohibited enforcement of the indemnification provision and entered an order striking the second count of the cross-complaint and dismissing it with prejudice. The court found there was "no just reason for delaying enforcement or appeal" under Rule 304(a) (Ill. Rev. Stat. 1973, ch. 110A, par. 304(a), 50 Ill.2d R. 304(a)) and we took Bonesz's appeal under Rule 302(b) (Ill. Rev. Stat. 1971, ch. 110A, par. 302(b), 50 Ill.2d R. 302(b)).

Prior to the enactment of the indemnity statute, this court had held that agreements indemnifying one against one's own negligent conduct were not void as against public policy. (*John Griffiths & Son Co. v. National Fireproofing Co.*, 310 Ill. 331.) Holdings such as these did not, of course, preclude the legislature from declaring that such agreements are contrary to the public policy, for as

this court observed in *Griffiths:* "The public policy of the state is to be found in its constitution and statutes, and, where these are silent, in its judicial decisions." 310 Ill. 331, 341.

The first contention Bonesz makes is that section 1 of the Act violates the equal protection clause of our constitution (Ill. Const., art. I, sec. 2), and also its prohibition of special legislation (Ill. Const., art. IV, sec. 13). The argument is that the legislative classification in the statute is unreasonable because it applies only to what may be broadly described as construction contracts. Indemnity and hold-harmless provisions in other types of contracts, it says, continue to be enforceable.

There is no question that the legislature may establish classifications, for "perfect uniformity of treatment of all persons is neither practical nor desirable." (*Grasse v. Dealer's Transport Co.,* 412 Ill. 179, 193.) A classification, however, cannot be arbitrary or unreasonable. It must be based on a rational difference of condition or situation existing in the persons or the objects upon which the classification rests. (*Illinois Coal Operators Association v. Pollution Control Board,* 59 Ill.2d 305, 311; *Youhas v. Ice,* 56 Ill.2d 497, 500; *Begich v. Industrial Com.,* 42 Ill.2d 32, 35; *People ex rel. County of Du Page v. Smith,* 21 Ill.2d 572, 578.) This was described in *People ex rel. County of Du Page v. Smith,* 21 Ill.2d 572, 578, where this court said: "If there is a reasonable basis for differentiating between the class to which the law is applicable and the class to which it is not, the General Assembly may constitutionally classify persons and objects for the purpose of legislative regulation or control, and may pass laws applicable only to such persons or objects." A differentiation or distinction "is not arbitrary if any state of facts can reasonably be conceived that would sustain it." *Illinois Association of Fire Fighters v. City of Waukegan,* 37 Ill.2d 423, 425, quoting *Bagdonas v. Liberty Land & Investment Co.,* 309 Ill. 103, 110.

The prohibition against special legislation does not mean that a statute must affect everyone in the same way. It means simply that "a law shall operate uniformly throughout the State in all localities and on all persons in like circumstances and conditions." (*People ex rel. City of Salem v. McMackin,* 53 Ill.2d 347, 364.) The burden of demonstrating that a classification is unreasonable or arbitrary is upon the person attacking the validity of the classification. *People v. Palkes,* 52 Ill.2d 472, 477.

Bonesz's claim that in order to have had a valid legislative classification the statute would have to be applicable to all contracts that contain indemnity or hold-harmless agreements must be rejected. We consider there are sufficient differences between the industry affected, which we may generally describe as the construction industry, and others to form a reasonable basis for the classification.

Work in the construction industry is often hazardous and if it is not performed with proper safeguards and precautions, workers (*Larson v. Commonwealth Edison Co.,* 33 Ill.2d 316, 322) and members of the general public as well are exposed to danger of injury. It is not inappropriate to observe that the Structural Work Act (Ill. Rev. Stat. 1973, ch. 48, pars. 60 through 69) was enacted to protect those engaged in particularly hazardous construction work and to lessen the extent of the dangers in such work. (*Halberstadt v. Harris Trust & Savings Bank,* 55 Ill.2d 121, 127; *Kobus v. Formfit Co.,* 35 Ill.2d 533, 537.) It has been held that the Act, which is applicable to construction activities, is based on a valid classification (*Claffy v. Chicago Dock and Canal Co.,* 249 Ill. 210), and a liberal construction of the Act has been adopted to meet the legislative aim of protecting the construction worker. *McNellis v. Combustion Engineering, Inc.,* 58 Ill.2d 146, 151; *Crafton v. Lester B. Knight & Associates, Inc.,* 46 Ill.2d 533, 537.

It is generally known that indemnity and hold-harm-

less agreements are most widely used in the construction industry. The legislature in enacting section 1 may have considered that the widespread use of these agreements in the industry may have removed or reduced the incentives to protect workers and others from injury. (See Prosser, Handbook of the Law of Torts sec. 4 (4th ed. 1971).) For example, persons having "charge of the work" and, thus, persons liable for violations of the Structural Work Act are able to escape the consequences of this liability by requiring indemnifying agreements from, let us say, general contractors or subcontractors. Having arranged the avoidance of the burdens of liability they no longer have the same motivation "to lessen the extent of the danger" (*Halberstadt v. Harris Trust & Savings Bank,* 55 Ill.2d 121, 127) to the prejudice of the worker's safety and interest. Too, the members of the general public protected from dangers presented by, for example, the improper design, construction and maintenance of buildings would be obviously affected adversely if those charged with responsibility were able to avoid the consequences of liability through indemnity agreements. Viewed in this light, we consider that section 1 of the indemnity statute serves to protect workers in the industry and the public as well from dangers associated with construction work. The statute would thwart attempts to avoid the consequences of liability and thereby insure a continuing motivation for persons responsible for construction activities to take accident prevention measures and provide safe working conditions.

The legislature was not required to nullify the use of indemnity agreements in every industry or area where their use might be deemed to be contrary to public interest. In *Illinois Coal Operators Association v. Pollution Control Board,* 59 Ill.2d 305, 312-13, it was contended that our constitution's prohibition of special legislation was violated because sounds from construction equipment were exempted from the Pollution Control Board's regulations,

though identical equipment used in mining was regulated. We rejected the contention, saying: "We would also remark that so far as legislative classification is concerned, it has been recognized that evils in the same field may be of different dimensions and reform may take place one step at a time. The legislature may address itself to one stage of a problem and not take action at the same time as to other phases. [Citations.] "

We would add that at least three States, California, Michigan and New York, have statutes resembling ours which declare certain indemnity contracts relating to construction to be contrary to public policy. (Cal. Civil Code sec. 2782 (West 1974); Mich. Comp. Laws sec. 691.991 (1970); N.Y. Gen. Oblig. Law sec. 5—324 (McKinney 1974).) Only the Michigan statute appears to have been challenged on constitutional grounds (*Brda v. Chrysler Corp.* (1973), 50 Mich. App. 332, 213 N.W.2d 295), and those were different from the ones considered here.

Another contention of Bonesz is that the indemnity statute by its terms does not extend to agreements to indemnify against claims arising under the Structural Work Act and consequently the trial court erred in holding that the statute precluded it from recovering against the general contractor Boulton. Bonesz observes that the statute only voids agreements to indemnify "another person from that person's own negligence," and that the Structural Work Act (Ill. Rev. Stat. 1971, ch. 48, pars. 60-69) provides a cause of action only when there is a "wilful violation" or a "wilful failure to comply." (Ill. Rev. Stat. 1971, ch. 48, par. 69.) Bonesz concludes: "Thus, those guilty of wilful misconduct may be indemnified against their own wrong doing, while those charged with negligent conduct only may not. Again, unconstitutional 'special' legislation is the result."

We must reject the argument. First, an agreement to indemnify against wilful misconduct would, as a general

rule, be contrary to public policy and unenforceable though there were no statute to that effect. This is illustrated in section 575 of the Restatement of Contracts (1932), which states in part: "A bargain for exemption from liability for the consequences of a wilful breach of duty is illegal ***." (See also 15 S. Williston, Contracts sec. 1750A (3d ed. 1972); 6A A. Corbin, Contracts sec. 1472 (1964).) It was unnecessary for the statute to declare that agreements to indemnify against the consequences of wilful misconduct were contrary to public policy. Second, though a violation of the Structural Work Act must be "wilful" (Ill. Rev. Stat. 1971, ch. 48, par. 69) this court decided as early as 1914 in *Schultz v. Henry Ericsson Co.,* 264 Ill. 156, 166, that to have a wilful violation of the statute it was not necessary that there should have been wilful misconduct or "a reckless disregard" of the statute's provisions. Rather it was said in *Schultz:* "The employer is liable not only when the dangerous conditions are known to him, but also when by the exercise of reasonable care the existence of such dangerous conditions could have been discovered and become known to him." This is the view that has consistently been taken by this court in determining violations of the Act. Most recently in *Juliano v. Oravec,* 53 Ill.2d 566, 571, we said: "Plaintiff must, of course, establish a willful violation of the Act by defendant. Defendant is deemed to have known that which he reasonably should have known (*Miller v. DeWitt* (1967), 37 Ill.2d 273, 291), and included therein are the applicable statutory requirements."

A succinct description of the judicial construction of this portion of the Act appears in the comment to instruction No. 180.01 of Illinois Pattern Jury Instructions (Civil, 2d ed. 1968). It states:

"In order to give effect to existing case law, the term 'wilful' has not been used in connection with a violation of the Act in the instructions in this section. Although the word 'wilful' appears in

the statute, the courts have not construed that word in its ordinary sense. The courts have said that a violation of the Structural Work Act is 'wilful' when a person having charge of the work knew or, in the exercise of ordinary care, could have known of a dangerous condition. *Schultz v. Henry Ericsson Co.*, 264 Ill. 156, 166, 106 N.E. 236, 240 (1914); *Kennerly v. Shell Oil Co.*, 13 Ill.2d 431, 439, 150 N.E.2d 134, 139 (1958); *cf. Gannon v. Chicago M. St. P. & Pac. Ry. Co.*, 25 Ill. App. 2d 272, 167 N.E.2d 5 (1960), *rev'd on other grounds* 22 Ill.2d 305, 175 N.E.2d 785 (1961). It is not necessary that there be a reckless, wanton or deliberate disregard of the provisions of the Act to constitute a 'wilful' violation. *Gundich v. Emerson-Comstock Co.*, 21 Ill.2d 117, 129, 171 N.E.2d 60, 67 (1960); *Oldham v. Kubinski*, 37 Ill. App. 2d 65, 87, 185 N.E.2d 270, 280 (2d Dist. 1962). Because use of the word 'wilful' would tend to mislead the jury, the word has not been used."

This interpretation of the statute has been appropriate. As we have observed, a purpose of the Structural Work Act was to protect those engaged in particularly hazardous construction work, and it could hardly have been the intention of the legislature to have its protection limited to the minority of cases which involve intentional or reckless or wanton conduct.

The legislature, at the time of its enactment of the statute in question, was aware that the courts had used typical negligence language in deciding whether the Act was violated. We judge the legislative intendment was to include Structural Work Act cases within the reach of the indemnity statute and that the trial court did not err in holding that an agreement to indemnify for liability under the Structural Work Act was made unenforceable by section 1 of the indemnity statute.

Bonesz's last contention is constructed from section 3 of the indemnity statute, which provides: "This Act does not apply to construction bonds or insurance contracts or agreements." (Ill. Rev. Stat. 1971, ch. 29, par. 63.) Bonesz states that one can avoid the operation of section 1 and can make a construction agreement for indemnity enforceable simply by placing the provision in a construction bond or insurance contract. Thus, it is argued, section 3 creates an arbitrary and irrational exception to section 1. The argument does not persuade. Section 3 simply makes it clear that section 1 is not directed at the purchase of bonding or insurance agreements to assure performance or the satisfaction of liability.

For the reasons given, the judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*