(Nos. 62418, 62422 cons

THE PEOPLE *ex rel.* SAMUEL K. SKINNER, Chairman of the Capital Development Board, Appellee, v. HELLMUTH, OBATA & KASSABAUM, INC., *et al.*, Appellants.

*Opinion filed October 17, 1986.—Rehearing*
*denied December 1, 1986.*

254

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (D. Kendall Griffith and Joshua G. Vincent, of counsel), for appellant Hellmuth, Obata & Kassabaum.

Niew & Zitzka, of Oak Brook (Stanley E. Niew, of counsel), for appellants Miller-Davis Company and United States Fidelity and Guaranty Company.

O'Halloran, Lively & Walker, of Northbrook (Paul T. Lively, of counsel), for appellant Thorleif Larsen & Son, Inc.

Neil F. Hartigan, Attorney General, of Springfield (Arthur D. Nordenberg, Special Assistant Attorney General, of counsel), for appellee.

Paul M. Lurie, Steven G. M. Stein, Mark C. Friedlan-

der, and Barry D. Weiss, of Lurie, Sklar & Simon, Ltd., of Chicago, for *amicus curiae* Illinois Council, American Institute of Architects, *et al.*

Charles E. Murphy, of Chicago (Murphy, Smith & Polk, of counsel), for *amici curiae* Builders' Association of Chicago, Inc., and Illinois Construction Industry Committee.

Richard S. Wisner and Paul Matthew Glavin, of Pretzel & Stouffer, Chartered, of Chicago (Robert Marc Chemers, of counsel), for *amicus curiae* Employers Insurance of Wausau.

JUSTICE MORAN delivered the opinion of the court:

Plaintiff, as chairman of the Capital Development Board (CDB), filed this action in the circuit court of Lake County against various defendants, alleging breach of an express contract, breach of an implied warranty of habitability, and negligence arising out of the allegedly faulty construction of a building at the College of Lake County (the college). Defendant Hellmuth, Obata & Kassabaum, Inc. (Hellmuth), is an architectural and engineering firm which designed and supervised construction of the building in question. Defendant Miller-Davis Company (Miller) was the general contractor on the project while defendant Thorleif Larsen & Son, Inc. (Larsen), was the masonry subcontractor. Defendant United States Fidelity & Guaranty Company (USF&G) was Miller's construction surety. Defendants moved to dismiss the complaint as barred by the applicable statute of limitations. The trial court granted defendants' motion. The appellate court reversed, holding the statute in question, section 13—214(a) of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 13—214(a)), invalid as constituting special legislation. (135 Ill. App. 3d 765.) Because a statute was ruled unconstitutional for the first time in the

appellate court, we granted defendants' petitions for appeal as a matter of right. See Ill. Const. 1970, art. VI, sec. 4(c); 87 Ill. 2d R. 317.

Defendants raise two issues for review: (1) Is section 13—214(a) constitutional, and (2) if section 13—214(a) is constitutional, does its limitations period apply to construction sureties?

The building in question was designed by defendant Hellmuth pursuant to an agreement, executed in 1968, with the college's board of trustees. The agreement also obligated Hellmuth to supervise the building's construction. The CDB succeeded to the rights of the college's board of trustees under the agreement by virtue of section 10.04 of the Capital Development Board Act of 1972, which entrusts the CDB with the responsibility to "construct and repair, or contract for and supervise the construction and repair of, buildings under the control of or for the use of any State agency." (Ill. Rev. Stat. 1973, ch. 127, par. 780.04.) Count I of plaintiff's complaint alleges that Hellmuth failed to meet its contractual obligations regarding the design of the building and supervision of construction, while count II alleges that Hellmuth was negligent in design and supervision.

Defendant Miller was the general contractor, pursuant to a construction contract entered into in May of 1972 between Miller and the Illinois Building Authority. The building authority assigned the contract to the CDB in September of 1972. Count III of the complaint alleges that Miller breached this contract by failing to conform to the contractual specifications. Count IV alleges that Miller negligently constructed the building.

Defendant Larsen was the masonry subcontractor on the project, pursuant to a contract with Miller. Count V of the complaint alleges that the CDB was an intended third-party beneficiary of the contract between Larsen and Miller, and that Larsen breached this contract by

improperly constructing the masonry. Count VI alleges that plaintiff was damaged by the negligent construction of the masonry.

Defendant USF&G, in May 1972, issued a bond guaranteeing Miller's performance under Miller's contract with the Illinois Building Authority (as noted above, this contract was assigned to the CDB). Count VII of the complaint alleges that, due to Miller's breach, USF&G is obligated to CDB under the performance bond.

Finally, counts VIII and IX allege that Hellmuth and Miller, respectively, breached an implied warranty of habitability with regard to the building in question.

The record reveals that a certificate of substantial completion for the project was issued on July 25, 1974. By July of 1975 the college began having problems with water leaking into the building. On July 11, 1975 the college's director of buildings and grounds wrote to Miller complaining of damage caused by the leaks. Several more complaints ensued. On February 11, 1977, the college's director of campus development wrote to Hellmuth specifically asking that Hellmuth assist the college in determining which of the defendants was at fault so that the college could be reimbursed for its damages. On March 23, 1977, the college's dean of business services wrote to Miller detailing the college's belief that the damage was the result of faulty construction. Based upon these letters the trial court found that the plaintiff "knew of its injury by March 1977, at the latest," and also found that the plaintiff knew at that time that its damages were wrongfully caused. Because plaintiff did not file suit until 1983 the trial court ruled that plaintiff's claims were barred by section 13—214(a).

Plaintiff does not challenge the trial court's finding as to the date the injuries were discovered. Plaintiff instead argues that the limitations in section 13—214(a) violate the special legislation provision of article IV, section 13,

of the Illinois Constitution (Ill. Const. 1970, art. IV, sec. 13).

In general the standards used to evaluate special legislation under the Illinois Constitution are the same standards applicable to equal protection claims. (*Jenkins v. Wu* (1984), 102 Ill. 2d 468, 477-78; *Illinois Housing Development Authority v. Van Meter* (1980), 82 Ill. 2d 116, 124.) Under this analysis legislative classification is permissible so long as there is a reasonable basis for the classification. (*People ex rel. DiFanis v. Barr* (1980), 83 Ill. 2d 191, 204; *Anderson v. Wagner* (1979), 79 Ill. 2d 295, 315.) As this court stated in *Delaney v. Badame* (1971), 49 Ill. 2d 168, 171, the rule is "that there is always a presumption that the General Assembly acted conscientiously, that the court will not interfere with its judgment unless classification is clearly unreasonable and palpably arbitrary, and that all reasonable doubts are to be resolved in favor of upholding the validity of a statute."

The statute at issue in the present case, section 13–214(a) of the Code of Civil Procedure, provides as follows:

"Actions based upon tort, contract or otherwise against any person for an act or omission of such person in the design, planning, supervision, observation or management of construction, or construction of an improvement to real property shall be commenced within 2 years from the time the person bringing an action, or his or her privity, knew or should reasonably have known of such act or omission." (Ill. Rev. Stat. 1983, ch. 110, par. 13–214(a).)

In *Skinner v. Anderson* (1967), 38 Ill. 2d 455, this court struck down a similar statute; it provided:

"No action to recover damages for any injury to property, real or personal, or for injury to the person, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real es-

> tate, nor any action for contribution or indemnity for damages sustained on account of such injury, shall be brought against any person performing or furnishing the design, planning, supervision of construction, or construction of such improvement to real property, unless such cause of action shall have accrued within four years after the performance or furnishing of such services and construction. This limitation shall not be available to any owner, tenant or person in actual possession and control of the improvement at the time such cause of action accrues." (Ill. Rev. Stat. 1965, ch. 83, par. 24(f).)

This statute, however, is different from the statute here in question in several critical aspects. First of all, the statute in *Skinner v. Anderson* was a statute of repose, prohibiting actions which did not accrue within four years of the completion of construction or design. Section 13—214(b) contains provisions regarding repose of actions, but this section is not in issue in this litigation. Section 13—214(a), the section in question, requires a plaintiff to file suit within two years of the time he or she knew or should have known of the act or omission.

More importantly, the statute invalidated in *Skinner v. Anderson* specifically excluded from its protection "any owner, tenant or person in actual possession and control of the improvement." (Ill. Rev. Stat. 1965, ch. 83, par. 24(f).) This exclusion was based solely on the status of the defendant as an owner, tenant or possessor. An example of the former statute's irrationality would be a situation where two architects—the first with an ownership interest in the property in question, the second with no such interest—each contributed to a building's negligent design. If the building collapsed five years after it was completed, a plaintiff injured by the collapse could not sue the second architect for negligent design because such a suit would be barred by the statute. However, an identical suit against the first architect would not be barred, solely because the first architect, in

addition to negligently designing the building, also held an ownership interest in the property.

The current statute, however, does not exclude persons based upon their status. It protects, on its face, anyone who engages in the enumerated *activities*. This court has given particular deference to legislative classifications when those classifications are based upon activities rather than status. In *Fujimura v. Chicago Transit Authority* (1977), 67 Ill. 2d 506, the court upheld a provision requiring that plaintiffs suing the Chicago Transit Authority (CTA) for personal injuries give the CTA notice of their intent to sue within six months of the injury and requiring that plaintiffs file suit within one year from the date of the injury. Plaintiffs suing most other local governmental entities were subject to a one-year notice provision and a two-year statute of limitations, but the court found that, "[w]hile the CTA may for some purposes be in a class with other public entities, its unique *function and activities* distinguish it from others for the purpose with which we are concerned." (Emphasis added.) (67 Ill. 2d 506, 516.) *Fujimura* relied in part on an earlier case, *Harvey v. Clyde Park District* (1965), 32 Ill. 2d 60, where the court struck down a statute which gave park districts immunity from tort actions while denying immunity to other governmental units engaged in the identical activities. The court in *Harvey*, while striking down the statute, noted that distinctions based upon activities would likely be upheld:

> "From this decision it does not follow that no valid classifications for purposes of municipal tort liability are possible. On the contrary it is feasible, and it may be thought desirable, to classify in terms of types of municipal function, instead of classifying among different governmental agencies that perform the same function." 32 Ill. 2d 60, 67.

On several other occasions the court has upheld stat-

utes which classified on the basis of activities. For example, in *Fireside Chrysler-Plymouth, Mazda, Inc. v. Edgar* (1984), 102 Ill. 2d 1, the court upheld a statute which prohibited automobile dealerships from operating on Sunday, despite the fact that other types of businesses were not similarly prohibited. Moreover, in *Davis v. Commonwealth Edison Co.* (1975), 61 Ill. 2d 494, the court upheld a statute which prohibited the use of agreements to indemnify or hold harmless another person from that person's negligence, even though the statute, like the statute here in question, applied only to construction activities.

The burden is on a party challenging legislation to demonstrate that the legislation is arbitrary and unreasonable. (*Illinois Housing Development Authority v. Van Meter* (1980), 82 Ill. 2d 116, 122; *Hoffmann v. Clark* (1977), 69 Ill. 2d 402, 425.) Moreover, a legislative classification must be upheld if any reasonable state of facts may be conceived to justify it. (*Illinois Housing Development Authority v. Van Meter* (1980), 82 Ill. 2d 116, 122; *Friedman & Rochester, Ltd. v. Walsh* (1977), 67 Ill. 2d 413, 419; *Davis v. Commonwealth Edison Co.* (1975), 61 Ill. 2d 494, 497.) The legislature need not attack all aspects of a given harm at once, but is instead free to address only part of a particular problem. *Anderson v. Wagner* (1979), 79 Ill. 2d 295, 319; *Friedman & Rochester, Ltd. v. Walsh* (1977), 67 Ill. 2d 413, 421; *Davis v. Commonwealth Edison Co.* (1975), 61 Ill. 2d 494, 499-500.

Different activities are subject to different problems, and the same problem may affect different activities in varying degrees. There is thus a particularly strong presumption that legislation which classifies on the basis of activities does so on the basis of legitimate differences as to the problem involved or the degree of harm applicable to the activity in question. As *Fujimura, Davis,*

and *Fireside Chrysler-Plymouth* demonstrate, the court has imposed a difficult burden on plaintiffs who seek to demonstrate that classification based upon activities is "clearly unreasonable and palpably arbitrary."

In the case at bar we do not believe plaintiff has met that burden. The legislature has traditionally enacted statutes of limitations which vary as to the activity and the cause of action involved. The court, in *Davis*, has upheld legislation which classified construction activities separately from other activities. The plaintiff has not demonstrated why it is unreasonable or arbitrary to classify construction activities separately for purposes of the statute of limitations.

It is clear that defendants Hellmuth, Miller, and Larsen are protected by the limitations in section 13–214(a). However, the claims against defendant USF&G are grounded solely on USF&G's issuance of a performance bond which protects plaintiff against Miller's breaches. Issuance of a performance bond cannot be deemed to be engaging in the "design, planning, supervision, observation or management of construction, or construction," and thus does not appear to fall within the statute's protection.

USF&G argues, however, that the claims against it require proof that Miller failed to comply with the construction contract between Miller and plaintiff. Relying on two appellate court opinions, *People ex rel. Stubblefield v. Wochner* (1927), 244 Ill. App. 30, and *Department of Revenue v. Prestige Casualty Co.* (1979), 68 Ill. App. 3d 988, USF&G argues that the running of the statute of limitations with regard to the claim against Miller bars any claim against it as Miller's surety.

The bond in question was issued as required by section 1 of "An Act in relation to bonds of contractors entering into contracts for public construction." (Ill. Rev. Stat. 1971, ch. 29, par. 15.) The bond binds USF&G to

plaintiff in the amount of the contract between plaintiff and Miller, conditioned so that the bond is void if Miller "shall promptly and faithfully perform said contract." The bond requires USF&G to take over and complete the contract in the event that Miller defaults. The bond itself contains no limitations on the time in which suit can be brought.

Actions based upon bonds are normally subject to a 10-year statute of limitations. (Ill. Rev. Stat. 1983, ch. 110, par. 13—206.) In our view the action here in question is subject only to this limitation. In *People v. Whittemore* (1912), 253 Ill. 378, 385, this court stated the rule that "a surety is never discharged because a cause of action *** against the principal *** is barred by the Statute of Limitations." USF&G's obligations to plaintiff arise out of the performance bond, and the mere fact that plaintiff's suit will require proof of Miller's breach of contract does not alter the nature of the action against USF&G. Statutes of limitation are wholly legislative creations, and therefore the court will not include sureties under the protection of section 13—214(a) in the absence of statutory language to that effect. To the extent that the appellate court's decisions in *Stubblefield* and *Prestige* would allow a surety to benefit from the barring of an action against its principal, we decline to follow those decisions.

For the foregoing reasons the decision of the appellate court, which held section 13—214(a) invalid, is reversed. The rulings of the circuit court of Lake County, dismissing the claims against defendants Hellmuth, Miller, and Larsen, are affirmed. The ruling of the circuit court dismissing the claims against defendant USF&G is reversed, and the cause is remanded.

*Appellate court reversed; circuit court affirmed in part and reversed in part; cause remanded.*