No. 1-95-1135

THOMAS M. SERAFIN and ) APPEAL FROM THE
SERAFIN & ASSOCIATES INC., ) CIRCUIT COURT OF
 ) COOK COUNTY
 )
 Plaintiffs-Appellants, )
 )
 v. )
 )
ALEX R. SEITH, WILLIAM D. )
SEITH, GREAT LAKES NETWORK ) 
INC., formerly known as ) No. 91 CH 07485
SEITH-SERAFIN COMMUNICATIONS, ) 
INC., WISCONSIN NEWS NETWORK, )
INC., LORD, BISSELL & BROOK, )
and LH&S COMMUNICATIONS, INC., ) THE HONORABLE 
 ) DOROTHY KINNAIRD
 Defendants-Appellees. ) JUDGE PRESIDING.

 JUSTICE COUSINS delivered the opinion of the court:
 In 1986, plaintiff Thomas Serafin (Serafin) and defendants
William Seith and Alex Seith formed a corporation. Alex Seith
was former partner in the law firm of Lord, Bissell & Brook. 
Serafin sued Alex Seith and others on August 14, 1991, alleging
that Alex Seith acted as Serafin's lawyer when he prepared
corporate resolutions in 1991 that permitted dilution of
Serafin's 30% stock ownership interest in the corporation. On
April 16, 1993, Serafin filed an amended complaint against Lord,
Bissell & Brook, seeking to compel statutory disclosure of
corporate records and for statutory remedies. The complaint also
alleged legal malpractice and negligence, as well as breach of
contract for legal services. Lord, Bissell & Brook filed a
motion to dismiss, which the trial court granted. Serafin filed
a sixth amended complaint asserting that Lord, Bissell & Brook
had a duty to advise him of the majority shareholders' ability to
eliminate preemptive rights when the corporation was formed in
1986. Lord, Bissell & Brook filed another motion to dismiss. 
The trial court granted the motion, finding that Serafin's claims
were barred by the six-year statute of repose applicable to
actions based on attorney malpractice. 
 On appeal, Serafin contends that: (1) the trial court erred
in finding that his complaint against Lord, Bissell & Brook was
time-barred by the statute of repose; (2) the trial court erred
in finding that the 1991 act was not the proximate cause of his
injury; (3) section 13-214.3 of the Code of Civil Procedure (735
ILCS 5/13-214.3(West 1992)) is unconstitutional; (4) the trial
court erred in not applying equitable estoppel; and (5) the trial
court erred in not finding that Alex Seith as a partner with
Lord, Bissell & Brook fraudulently concealed the cause of action
from Serafin.
BACKGROUND
 On October 13, 1986, a preorganization agreement was
executed between Thomas Serafin, Alex Seith and Seith's son,
William Seith. The preorganization agreement was prepared by Alex
Seith, with the assistance of attorneys and/or employees of Lord,
Bissell & Brook. The preorganization agreement specified the
number of shares that each of the three shareholders would
receive once the corporation was incorporated. The number and
percentage of stock ownership were as follows: Alex Seith, 510
shares with 51% ownership; William Seith, 190 shares with 19%
ownership and Thomas M. Serafin, 300 shares with 30% ownership.
The subscription agreement stated, among other things:
 "The subscribers hereto shall take whatever action is 
 appropriate in order to assure that the common stock for
 which they hereby subscribe is held only by them and by
 those persons similarly interested in the objectives and
 operations of the proposed corporation, all in order to
 insure continuity and harmony in management by persons
 familiar with the corporation's requirements and devoted to
 its best interests."
 On or about October 17, 1986, Great Lakes Network, Inc.,
formerly known as Seith-Serafin Communications, Inc. (the
corporation), was incorporated. The articles of incorporation
were drafted by Alex Seith with the assistance of attorneys
and/or employees of Lord, Bissell & Brook. The articles contained
the following words which gave the stockholders preemptive rights
to acquire unissued shares of stock in order to protect their
respective position(s) within the corporation:
 "The share holders of the corporation shall have preemptive
rights to acquire unissued shares of the corporation, or
securities of the corporation convertible into or carrying a
right to subscribe to or acquire shares."
 On December 26, 1990, the articles were amended by unanimous
consent to provide for 5,000 authorized shares of common stock.
The unanimous consent was prepared by Alex Seith with the
assistance of attorneys and/or employees of Lord, Bissell &
Brook. Also, by unanimous consent, on January 2, 1991, 2,000
shares of stock were issued and all three shareholders were given
the benefit of preemptive rights as follows: Alex Seith, 510
original shares and a total of 1,020 shares after new stock issue
with 51% ownership; William Seith, 190 original shares and a
total of 380 shares after new stock issue with 19% ownership, and
Thomas M. Serafin, 300 original shares and a total of 600 shares
after new stock issue with 30% ownership. 
 On April 22, 1991, Susan Gordon, an employee of Lord,
Bissell& Brook and secretary to Alex Seith, met with Serafin at a
restaurant and showed him two corporate documents that Alex Seith
requested that Serafin sign. The first document was a unanimous
consent of the directors of the corporation to recommend to the
shareholders that the authorized stock be increased from 5,000 to
50,000 shares and that the articles be amended to eliminate the
shareholders' preemptive rights: 
 "RESOLVED: That Article Four Paragraph 2 of the Articles of
 Incorporation be amended to delete the following sentence:
 'The shareholders of the corporation shall have preemptive
 rights to acquire unissued shares of the corporation, or
 securities of the corporation convertible into or carrying a
 right to subscribe to or acquire shares.'
 FURTHER RESOLVED: That Article Five of the articles of
 Incorporation shall be amended to provide that the
 authorized number of shares of stock be increased from 5,000
 to 50,000."
 The second document was a unanimous consent of the
shareholders of the corporation adopting the above resolution
eliminating preemptive rights. Serafin told Susan Gordon that he
wanted to talk to Alex Seith before signing the two documents.
The same day, Alex Seith had the documents faxed to Serafin's
office and telephoned Serafin at his office. Alex Seith told
Serafin that the documents would help the company, would help the
investors get stock more easily, and would be good for each of
the shareholders. On April 22, 1991, Serafin signed both
documents.
 On April 22, 1991, the corporation's board of directors was
comprised of Alex Seith, William Seith, Thomas Serafin, and James
L. Fletcher, Esq. On May 10, 1991, the articles were amended to
increase the number of board members to add Carol Seith, wife of
William Seith, as a director.
 On May 13, 1991, majority shareholders Alex Seith and
William Seith voted to remove Serafin as director of the
corporation. On May 15, 1991, by unanimous consent of the
remaining directors, Alex Seith, Carol Seith and James L.
Fletcher, Serafin was removed as president of the corporation.
 On May 20, 1991, the board of directors unanimously
consented to issue an additional 100,000 shares of stock: Alex
Seith received 70,000 shares and William Seith received 30,000 at
a price of 20 cents per share. The Seiths executed stock
subscription agreements pursuant to the board's action, agreeing
that as consideration for the stock, they would forgive part of
the outstanding principal on a loan that they had made to Seith-
Serafin Communications. On May 28, 1991, by the informal action
of majority shareholders Alex Seith and William Seith, the name
of the corporation was changed from Seith-Serafin Communications,
Inc., to Great Lakes Network, Inc.
 By letter dated July 9, 1991, on Lord, Bissell & Brook
letterhead, Alex Seith wrote to Serafin stating that Serafin's
30% ownership in the company had been diluted to "slightly less
than" 0.3% of the outstanding shares. On August 7 and August 13,
1991, the then-current board of directors and shareholders
recommended and ratified, respectively, the actions taken by the
corporation on April 22, 1991, and May 20, 1991, namely, the
increase of authorized shares to 100,000 and the elimination of
preemptive rights from the articles. 
 Serafin filed suit on August 14, 1991, against Alex R.
Seith, William D. Seith, Great Lakes Network, Inc., f/k/a Seith-
Serafin Communications, Inc., and Wisconsin News Network, Inc. 
Against Alex Seith, Serafin alleged, among other things, fraud
and legal malpractice as Serafin's lawyer in conveying, then
eliminating, shareholders' preemptive rights which resulted in
dilution of Serafin's interest in the corporation from 30% to
0.3%
 On April 16, 1993, Serafin filed his third amended verified
complaint alleging for the first time three counts against Lord,
Bissell & Brook, including a count for legal malpractice and
fraud. On April 28, 1994, Lord, Bissell & Brook filed a section
2-615 motion to dismiss. On July 8, 1994, the Honorable Dorothy
Kinnaird granted Lord, Bissell & Brook's motion to dismiss. After
several further amendments to the complaint, Serafin was given
leave to file a sixth amended complaint, again including legal
malpractice and fraud counts against Lord, Bissell & Brook. On
October 27, 1994, Lord, Bissell & Brook filed a motion to dismiss
Serafin's sixth amended verified complaint based on sections 2-
619(a)(5) and 2-619(a)(9) of the Illinois Code of Civil
Procedure. 735 ILCS 5/2-619(a)(5), 2-619(a)(9)(West 1992). On
December 14, 1994, the trial court granted Lord, Bissell &
Brook's motion to dismiss all counts against it. 
 On January 11, 1995, plaintiffs filed a motion to reconsider
and to vacate the order of December 14, 1994, which was denied on
February 23, 1995. Both the December 14, 1994, and February 23,
1995, orders allowed for an appeal under Supreme Court Rule
304(a) (134 Ill. 2d R. 304(a)), since counts I through IX against
Alex Seith, William Seith and the corporation are still pending
in the circuit court of Cook County.
ANALYSIS 
 The purpose of a section 2-619 motion is to provide a means
to dispose of issues of law and easily proved issues of fact. 
Harris v. News-Sun, 269 Ill. App. 3d 648, 650, 646 N.E.2d 8
(1995). Section 2-619(a)(5) allows a motion to dismiss because
the action was not commenced within the time limited by law. 735
ILCS 5/2-619(a)(5)(West 1992). 
 Under section 2-619(a)(9), an action may be dismissed on the
ground that a claim asserted is barred by other affirmative
matter avoiding the legal effect or defeating the claim. 735
ILCS 5/2-619(a)(9)(West 1992). "Affirmative matter" includes a
defense that completely negates the asserted cause of action. 
West v. Gramley, 262 Ill. App. 3d 552, 556, 634 N.E.2d 1261
(1994). A trial court's dismissal of a complaint is proper where
the affirmative matter refutes crucial conclusions of law or
conclusions of material fact that are unsupported by allegations
of specific facts. Harris, 269 Ill. App. 3d at 651. The
affirmative matter must, however, be something more than evidence
offered to refute a well-pleaded fact in the complaint as such
well-pleaded facts must be taken as true. West, 262 Ill. App. 3d
at 556. A reviewing court must determine whether the allegations
of the complaint, when interpreted in the light most favorable to
the plaintiff, are sufficient to set forth a cause of action upon
which relief may be granted. Munizza v. City of Chicago, 222
Ill. App. 3d 50, 52, 583 N.E.2d 561 (1991).
 Serafin claims that his sixth amended complaint clearly pled
1991 acts and omissions upon which his cause of action for
damages is premised. Lord, Bissell and Brook argues, however,
that the statute of repose applicable to attorney malpractice
actions barred Serafin's claims based on the 1986 acts or
omissions. Sections 13-214.3(b),(c) and (f) of the Code of Civil
Procedure provide:
 "(b) An action for damages based on tort, contract, or
 otherwise *** against an attorney arising out of an act or
 omission in the performance of professional services ***
 must be commenced within 2 years from the time the person 
 bringing the action knew or reasonably should have known of
 the injury for which damages are sought.
 (c) *** An action described in subsection (b) may not
 be commenced in any event more than 6 years after the date
 on which the act or omission occurred.
 * * *
 (f) This Section applies to all causes of action
 accruing on or after its effective date." 735 ILCS 5/13-
 214.3(West 1992).
The effective date of the statute was January 1, 1991. 735 ILCS
5/13-214.3(b),(c),(f)(West 1992). 
 To determine whether Serafin's complaint is time-barred, we
must first determine when Serafin's cause of action legally
accrued. Section 13-214.3(c) makes bringing of the action under
subsection (b) subject to a period of six years after the date on
which the applicable act or omission occurred. 
 In the case sub judice, when the Seiths formed the
corporation with Serafin on October 13, 1986, Alex Seith was
issued 510 shares of stock, William Seith was issued 190 shares
of stock, and Thomas Serafin was issued 300 shares of stock. 
Thus, Alex Seith and William Seith together were issued 700
shares of stock, or 70% of the stock. The articles of
incorporation provided each of the shareholders with preemptive
rights. However, the applicable Illinois Business Corporation Act
of 1983 at the time of incorporation and at all times since
provides:
 " 10.20. Amendment by directors and shareholders. Any
 amendment authorized by Section 10.05 may be adopted by the
 action of the directors and shareholders in the following
 manner:
 * * * 
 (c) *** The proposed amendment shall be adopted upon 
 receiving the affirmative vote of the holders of at least
 two-thirds of the outstanding shares entitled to vote on 
 such amendment ***." 805 ILCS 5/10.20(c)(West 1992).
Thus, the shareholders with at least two-thirds of the
outstanding shares can amend corporate articles without any
approval of shareholders holding less than one-third of the
outstanding shares. This right of Alex Seith and William Seith
was not disclosed to Serafin. Serafin argues that the
nondisclosure on October 13, 1986, of the rights of Alex Seith
and William Seith was a violation of a fiduciary duty. Serafin
argues that the provisions of sections 13-214.3(b) and (c) do not
begin to run from 1986, but, rather, from 1991. 
 Serafin further contends that he sufficiently alleged 1991
wrongful acts and omissions upon which his cause of action on
damages is premised. Specifically, he asserts that it was Lord,
Bissell & Brook's 1991 act or the last act of drafting the
documents eliminating preemptive rights and diluting Serafin's
interest that caused the actual damage on which the lawsuit is
based. He also contends that the statute of repose does not bar
an action against Lord, Bissell & Brook until six years after the
1991 wrongful acts and omissions upon which his cause of action
is premised. He further claims that Lord, Bissell & Brook
engaged in a continuous course of negligent treatment between
1986 and 1991 by failing to inform him of the legal consequences
of signing corporate documents eliminating his rights. We
disagree.
 Serafin relies on Cunningham v. Huffman, 154 Ill. 2d 398,
609 N.E.2d 321 (1993), to support his argument. In Cunningham,
the patient received an interuterine device (IUD) from the
defendant doctor in 1977. The patient began experiencing
abdominal pain, and, in 1980, after probing failed to disclose
the IUD, the doctor inserted another IUD and provided continuous
treatment to the patient through 1988. After further problems
and abdominal pain, the IUD was removed in 1988 by a different
doctor. The defendant argued that, for purposes of the statute
of repose, the proximate cause of injury was insertion of the
first IUD in 1977. The plaintiff argued that the doctor's
continuous course of treatment tolled the running of the statute
of repose until the end of the doctor-patient relationship in
1988. The supreme court rejected the "continuous course of
treatment" argument, but found that the term "act or omission or
occurrence" did contemplate a continuing course of negligent
treatment. Cunningham, 154 Ill. 2d at 405. The court stated
that "act or omission" does not mean a specific "act or
omission"; otherwise, the legislature would have provided
"specific act" or "specific omission." Cunningham, 154 Ill. 2d
at 405. The court held that the commencement of the statute of
repose was the last "act or omission or occurrence" that caused
the injury. Cunningham, 154 Ill. 2d at 406. See also Johnson v.
Core-Vent Corp., 264 Ill. App. 3d 833, 636 N.E.2d 833 (1993).
 Serafin also relies on Witt v. Jones & Jones Law Offices,
P.C., 269 Ill. App. 3d 540, 646 N.E.2d 23 (1995). In Witt, the
plaintiff filed a legal malpractice action seeking damages
against a law firm for negligently drafting a will. The
plaintiff argued that the statute of limitations was tolled by a
"continuous representation rule." Witt, 269 Ill. App. 3d at 544. 
The plaintiffs analogized this rule to the "continuous course of
treatment" doctrine discussed in Cunningham. The plaintiffs 
argued that the continuous representation rule was applicable to
legal malpractice claims against an attorney who continued to
represent a client, and the statute of limitations on the
malpractice claim should not have run until the attorney ceased
to represent the client. The court rejected this argument
because there is no "continuous representation rule" in Illinois. 
The court stated, "[n]ot only have we failed to find a case
adopting the continuous representation rule in Illinois, but our
supreme court's rejection of the continuous course of treatment
doctrine in Cunningham [citation] suggests the court is not ready
to adopt a continuous representation rule with respect to legal
malpractice cases." (Emphasis added.) Witt, 269 Ill. App. 3d at
544. 
 Here, Serafin does not argue that the statute of repose was
tolled under the "continuous representation rule." Rather, he
argues that the statute of repose was tolled by a "continuous
course of negligent treatment" by Lord, Bissell & Brook between
1986 and 1991. Therefore, he asserts that the statute of repose
was tolled by the last act that caused the injury, which he
claims occurred in April and May of 1991. However, we believe
that the statute of repose in the instant case commenced to run
from the October 13, 1986, date of incorporation.
 We believe that the trial court was correct in dismissing
Serafin's 1993 complaint against Lord, Bissell & Brook because
Serafin's claim is predicated on the failure of Lord, Bissell &
Brook in 1986 to inform him that his preemptive rights could
later be eliminated by the majority shareholders and that he was
damaged by the elimination and the subsequent dilution of his
interest. In our opinion, the claim is clearly barred by the
six-year repose period of section 13-214.3. Alternatively, if,
as Serafin contends, his action is based on the conduct of Lord,
Bissell & Brook in 1991, then Serafin has not stated and cannot
state a cause of action because none of the 1991 acts or
omissions complained of proximately caused his injury. 
 Under the Illinois Business Corporation Act, an affirmative
vote of 66 % of the shares is all that is needed to eliminate
preemptive rights. 805 ILCS 5/10.20(c)(West 1992). At all
times, Alex Seith and William Seith possessed at least 70% of the
shares of the corporation and were empowered to eliminate
preemptive rights at any time with or without Serafin's consent. 
Thus, any acts or omissions of Lord, Bissell & Brook could not
have been the proximate cause of Serafin's damages as Serafin's
agreement was not necessary to accomplish that purpose.
 We so hold because the elements of a legal malpractice claim
are: (1) the existence of an attorney-client relationship that
establishes a duty on the part of the attorney; (2) a negligent
act or omission constituting a breach of that duty; (3) proximate
cause establishing that "but for" the attorney's negligence, the
plaintiff would have prevailed in the underlying action; and (4)
damages. Ignarski v. Norbut, 271 Ill. App. 3d 522, 525, 648
N.E.2d 285 (1995). In order to satisfy the proximate cause
element of his claim, the plaintiff must plead facts sufficient
to show that but for the attorney's malpractice, the client would
have been successful in the undertaking the attorney was retained
to perform. Glass v. Pitler, 276 Ill. App. 3d 344, 349-50, 657
N.E.2d 1075 (1995); Ignarski, 271 Ill. App. 3d at 525. Damages
will not be presumed, and the client bears the burden of proving
he suffered a loss as a result of the attorney's alleged
negligence. Ignarski, 271 Ill. App. 3d at 526. 
 Although attorneys are obligated to inform their clients of
the risks associated with a proposed legal course of action
(Majumdar v. Lurie, 274 Ill. App. 3d 267, 271, 653 N.E.2d 915
(1995)), any warnings that Lord, Bissell & Brook could have given
to Serafin regarding the consequences of signing the documents in
1991 would not have prevented the dilution of his stock. 
Therefore, we hold that the 1991 acts did not proximately cause
Serafin's loss. 
 II
 Serafin also contends that section 13-214.3 is
unconstitutional because it is contrary to the fourteenth
amendment of the Constitution of the United States and the equal
protection clause of the Illinois Constitution. This argument
has been waived because Serafin has failed to comply with the
provisions of Supreme Court Rule 19 (134 Ill. 2d R. 19),
requiring that notice be given the Attorney General by any party
questioning the constitutionality of a state statute in a
proceeding where the Attorney General is not already a party. 
See Witt, 269 Ill. App. 3d at 545.
 Moreover, even if this issue were not waived, we believe
that Serafin's constitutional arguments are without merit. A
statute is presumed to be valid, and the burden is on the party
challenging it to establish its constitutional invalidity. 
Adcock v. Montgomery Elevator Company, 274 Ill. App. 3d 519, 525,
654 N.E.2d 631 (1995). As a general rule, courts will not
interfere with the legislature's judgment unless the
classification is clearly unreasonable and palpably arbitrary,
and will resolve all reasonable doubts in favor of upholding the
validity of the statute. People ex rel. Skinner v. Hellmuth,
Obata & Kassabaum, Inc., 114 Ill. 2d 252, 500 N.E.2d 34 (1986);
Billman v. Crown-Trygg Corp., 205 Ill. App. 3d 916, 926-27, 563
N.E.2d 903 (1990).
 Specifically, Serafin argues that the two-year statute of
limitations with a six-year statute of repose confers a benefit
upon attorneys that is not available to any other citizen of
Illinois. This statement is clearly incorrect as evidenced by
statutes of repose for other professions. For example, actions
against physicians and hospitals must be brought within four
years after the date on which the alleged wrongful conduct
occurred. 735 ILCS 5/13-212(a)(West 1992). Also, actions
against persons in the design, planning, supervision, observation
or management of construction, or construction of an improvement
to real property may not be brought "after 10 years have elapsed
from the time of such act or omission." 735 ILCS 5/13-
214.3(b)(West 1992). Therefore, the statute of repose does not
violate the equal protection clause of the constitution. 
 Serafin also claims that the statute is unconstitutional
because it is retroactive in its effect and would bar a cause of
action before it has ripened. We disagree. The period of repose
gives effect to a policy different from that advanced by a period
of limitations; the purpose of a statute of repose is to impose a
cap on the applicability of the discovery rule so that the outer
limit terminates the possibility of liability after a definite
period of time, regardless of a potential plaintiff's lack of
knowledge of his cause of action. Boggs v. Adams, 838 F. Supp.
1293, 1298 (N.D. Ill. 1993); Mega v. Holy Cross Hospital, 111
Ill. 2d 416, 422, 490 N.E.2d 665 (1986). Because the statute of
repose shortens the limitations period, a person whose cause of
action arose before the effective date of the statute will be
given a reasonable period of time in which to bring his action.
Mega, 111 Ill. 2d at 422. The fact that a repose provision may,
in a particular instance, bar an action before it is discovered
is an accidental rather than necessary consequence. Mega, 111
Ill. 2d at 424. 
 We believe the two-year discovery period as well as the six-
year statute of repose appear reasonably related to the statute's
purpose. The fact that Serafin failed to file a timely suit is
not justification for finding section 13-214.3 unconstitutional. 
See Witt, 269 Ill. App. 3d at 545; Blackwood v. Rusk, 148 Ill.
App. 3d 868, 871, 500 N.E.2d 69 (1986).
 III
 Serafin next contends that the trial court erred in not
applying equitable estoppel. Equitable estoppel is a theory that
precludes a litigant from denying prior assertions in cases where
it would be unjust to permit the litigant to disavow express and
implied statements upon which another party has relied and that
have caused him to forego filing his suit. Cramsey v. Knoblock,
191 Ill. App. 3d 756, 765, 547 N.E.2d 1358 (1989). A party will
not be equitably estopped from asserting a statute of limitations
defense where plaintiff fails to show that: (1) defendant has
made some misrepresentation or concealment of a material fact;
(2) defendant had knowledge, either actual or implied, that the
representations were untrue at the time they were made; (3)
plaintiff was unaware of the untruth of the representations both
at the time made and the time they were acted upon; (4) defendant
either intended or expected his representation or conduct to be
acted upon; (5) plaintiff did in fact rely upon or act upon the
representations or conduct; and (6) plaintiff has acted on the
basis of the representations or conduct such that he would be
prejudiced if defendant is not estopped. Nickels v. Reid, 277
Ill. App. 3d 849, 855-56, 661 N.E.2d 442 (1996). Moreover, the
doctrine of equitable estoppel will not apply to a case if
defendant's conduct terminated within ample time to allow the
plaintiff to still avail himself of any legal rights he may have
had. Cramsey, 191 Ill. App. 3d at 765.
 Serafin argues that Lord, Bissell & Brook should be estopped
from asserting the statute of repose as a defense because he
relied on its assurances that his interests were protected. 
Serafin relies on Jackson Jordan, Inc. v. Leydig, Voit & Mayer,
158 Ill. 2d 240, 633 N.E.2d 627 (1994), to support his argument. 
In Jackson Jordan, the client, a manufacturer, asked its
attorneys for an opinion as to whether a new model would infringe
on any existing patents. In 1973, the attorneys advised the
client that the new model did not infringe upon any existing
patents. The client proceeded to manufacture and market the
product, but was notified in 1982 that another company held a
patent on a similar machine. The client settled the patent
infringement dispute but did not file a malpractice action until
1988. The court held that equitable estoppel applied because had
it not been for the attorneys' reassurance that no patent was
infringed, the plaintiff would have filed suit sooner. Jackson
Jordan, 158 Ill. 2d at 252. 
 We believe that Jackson Jordan is inapposite to the instant
case. Although Serafin states that Lord, Bissell & Brook
passively concealed its negligence until April 22, 1991, he did
not file a complaint against it until April, 1993. Therefore, we
hold that Serafin had ample time to avail himself of any legal
rights he may have had.
 IV
 Lastly, Serafin contends that the trial court erred in not
finding that Alex Seith as a partner of Lord, Bissell & Brook 
fraudulently concealed the cause of action from him. Section 13-
215 of the Code states:
 "If a person liable to an action fraudulently conceals
 the cause of such action from the knowledge of the person
 entitled thereto, the action may be commenced at any time
 within 5 years after the person entitled to bring the same
 discovers that he or she has such cause of action, and not
 afterwards." 735 ILCS 5/13-215 (West 1992).
Such concealment requires affirmative acts or representations
designed to prevent discovery of the cause of action. Hauk v.
Reyes, 246 Ill. App. 3d 187, 194, 616 N.E.2d 358 (1993); Waters
v. Reingold, 278 Ill. App. 3d 647, 660, 663 N.E.2d 126 (1996). 
Silence alone does not ordinarily constitute fraudulent
concealment, unless the person occupies a fiduciary relationship
to plaintiff. Hagney v. Lopeman, 147 Ill. 2d 458, 463, 590
N.E.2d 466 (1992). Also, fraudulent concealment by someone other
than defendant does not ordinarily toll the statute of
limitations, unless the person fraudulently concealing the cause
of action is in privity with or occupies an agency relationship
with defendant, in which case defendant's knowledge or approval
of the concealment will toll the statute of limitations. 
Cramsey, 191 Ill. App. 3d at 767.
 However, if at the time the plaintiff discovers the
fraudulent concealment a reasonable time remains within the
applicable statute of limitations, section 13-215 does not toll
the running of the limitations period. Muskat v. Sternberg, 211
Ill. App. 3d 1052, 1061, 570 N.E.2d 696 (1991); Cramsey, 191 Ill.
App. 3d at 767. This rule is logical because once a party
discovers the fraud, it is no longer concealed, and if time
remains within which to file the action, section 13-215 cannot
operate to toll the limitations period. Muskat, 211 Ill. App. 3d
at 1061. Therefore, even assuming that Seith and Lord, Bissell &
Brook acted so as to fraudulently conceal the cause of action,
Serafin had ample time to file his complaint within the
limitations period. Accordingly, section 13-215 did not toll the
running of the statute of limitations. 
 For the reasons cited herein, the judgment of the circuit
court of Cook County is affirmed.
 Affirmed.