(No. 32068.—

IN RE ESTATE OF CHARLES G. BIRD.—(ILLINOIS PUBLIC AID COMMISSION, Appellee, *vs.* LEON T. SANDERSON, Exr., Appellant.)

*Opinion filed November 27, 1951.*

BEN COPPLE, of Chicago, (MEYER SILVERSTEIN, of counsel,) for appellant.

IVAN A. ELLIOTT, Attorney General, of Springfield, (WILLIAM C. WINES, JAMES C. MURRAY, and LAWRENCE W. RYAN, all of Chicago, of counsel,) for appellee.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

The executor of the estate of Charles G. Bird, deceased, is prosecuting this appeal from an order of the circuit court of Cook County allowing the claim of the Illinois Public Aid Commission, in the amount of $4999.00, against the inventoried assets of the decedent's estate.

This appeal, originally presented to the Appellate Court for the First District, was transferred to this court on the

ground that public revenue is involved. The cause presents the issues of whether a claim against a decedent's estate filed by the Illinois Public Aid Commission, an agency of the State, pursuant to sec. 5-4 of the Public Assistance Code, (Ill. Rev. Stat. 1949, chap. 23, par. 440-4,) to recover sums paid the decedent during his lifetime, must be filed within the time prescribed by section 204 of the Probate Act; (Ill. Rev. Stat. 1949, chap. 3, par. 356,) and whether the *nunc pro tunc* order, entered by the probate court and affirmed by the circuit court, allowing the claim to be filed as of the original date, as a lost record, was legally proper.

Under the stipulated facts it appears that the decedent during his lifetime received from the Illinois Public Aid Commission (herein referred to as the commission) some $4999, paid pursuant to the Old Age Pension Act. Letters of administration of decedent's estate were issued on June 28, 1949, and an inventory thereof was filed and approved on June 12, 1950. The records of the probate court do not show that any claim was ever filed by the commission, or that any summons was issued. However, at a hearing on the commission's petition to file a claim *nunc pro tunc* as of November 17, 1949, a former Assistant Attorney General testified that he did file the claim against the estate for $4999 on November 17, 1949, at which time he filed several other claims of the commission. His testimony is corroborated by a letter, admittedly received and acknowledged by the attorney for the estate, in which the latter was advised that the commission filed a claim against the estate on November 17, 1949, by the acknowledgment of the receipt of a copy of the claim by the attorney for the estate, and by the docket and case file records in the Attorney General's office.

On June 20, 1950, the attorney for the estate sent a letter to the Attorney General's office, advising that an examination of the dockets and files of the probate court

failed to disclose any claim filed by the commission; whereupon, after a further search of the court records, the commission filed a petition in the probate court, alleging the foregoing facts, and praying that inasmuch as the claim was lost or mislaid through some inadvertence, an order be issued allowing the commission to file the claim *nunc pro tunc* as of the date the claim was originally filed.

The probate court allowed the petition, and on appeal therefrom the circuit court found that the claim of the commission was filed in the office of the clerk of the probate court of Cook County on November 17, 1949, and that through no fault of the claimant the same was misplaced and never docketed. The court therefore affirmed the *nunc pro tunc* order, and further ordered that the claim in the amount of $4999 be allowed as a sixth class claim against the estate, as disclosed by the inventory filed, as well as against any subsequently discovered assets.

The executor of the estate has appealed therefrom on the theory that the commission, though a State agency, is required to file its claim within the 9-month period after the issuance of letters of administration, as provided in section 356 of the Probate Act, in order to charge the claim against inventoried assets, and that since no such claim was filed, the order allowing the claim was in error. Moreover, defendant contends the court was without jurisdiction to enter the *nunc pro tunc* order, since no proceedings were pending, and the order was unsupported by proper and sufficient evidence.

The commission, however, maintains that inasmuch as it is a State agency, asserting a public right, it is not bound by the time-limitation provisions of section 204 of the Probate Act, which are comparable to a statute of limitations, and that even if the commission were deemed bound thereby, the claim herein was filed on November 17, 1949, well within the statutory period, and hence properly chargeable against inventoried assets. The commission

argues further that the evidence reveals that the claim was lost through no fault of the commission, and that, inasmuch as the court has power to restore lost records, it properly issued the *nunc pro tunc* order allowing the claim to be filed as of the original date.

In support of this rationale, the commission relies upon the established principle of law, reiterated in *Clare* v. *Bell,* 378 Ill. 128, that unless the terms of a statute of limitations expressly include the State, county, municipality, or other governmental agencies, the statute, so far as public rights are concerned, is inapplicable to them.

Ordinarily, where that principle is invoked, the inquiry is whether the State, or its agencies or subdivisions, is asserting public rights on behalf of all the people of the State, or private rights on behalf of a limited group. (113 A.L.R. 377 *et seq; City of Chicago* v. *Chicago and North Western Railway Co.* 163 Ill. App. 251; 34 Am. Jur. 309; *Phillips* v. *Leininger,* 280 Ill. 132.) In the instant case, however, the inquiry is whether section 204 of the Probate Act, formerly section 70 of the Administration Act, can be deemed to be a statute of limitations so that the legal incidents of that concept could be held applicable.

Section 204 of the Probate Act provides: "All claims against the estate of a decedent, except expenses of administration and surviving spouse's or child's award, not filed within nine months from the issuance of letters testamentary or of administration, are barred as to the estate which has been inventoried within nine months from the issuance of letters, * * *."

There is an apparent conflict in the phraseology, if not in the legal conclusions, of this court with reference to the nature of this provision of the Probate Act.

In *Hathaway* v. *Merchants' Loan and Trust Co.* 218 Ill. 580, the court, in determining the retroactive effect of a provision reducing the time for filing claims against decedent's estate, referred to this section of the statute as a

statute of limitations, and distinguished it from a statute conferring jurisdiction. Similarly, in *Baird* v. *Chapman,* 120 Ill. 537, and *Roberts* v. *Flatt,* 142 Ill. 485, the provision is referred to as a statute of limitations. In *Durflinger* v. *Arnold,* 329 Ill. 93, 98, however, the court specifically stated that this provision fixing the time for filing claims against decedent's estates is not a general statute of limitations, but a specific act adopted for the particular purpose of facilitating the early settlement of estates, and held that even though the claim was not filed within the statutory period, it was enforceable against the heirs of the decedent and real property they had inherited. The court cited *Waughop* v. *Bartlett,* 165 Ill. 124, where a similar statement was made by the court in allowing the mortgagee to enforce collection as against inherited assets, even though his claim had not been filed against the estate within the time prescribed by section 70 of the Administration Act.

This interpretation of this section of the Probate Act was adopted by the Supreme Court of the United States in *Pufahl* v. *Estate of Parks,* 299 U.S. 217, where the court held that a claim by the receiver of a national bank against a former stockholder was subject to the time-limitation provision of section 70 of the Illinois Probate Act, and since it was not filed within the time prescribed therein, the claim, though not barred, could not be satisfied against inventoried assets, but only against subsequently discovered assets. The court did not regard the provision as a statute of limitations or assert the immunity of the sovereign from the operation of such statutes.

The *Pufahl case* was distinguished in *Harrison* v. *Deutsch,* 294 Ill. App. 8, where the court allowed a tax claim of the United States government to be asserted against inventoried assets even though the claim was not presented within the time prescribed by section 70. The court predicated its decision, however, upon the fact that there was a Federal statute giving priority to tax claims

of the Federal government, whereas in the *Pufahl case* no such priority statute was involved.

The commission relies upon the *Harrison case* in support of its argument that section 204 does not apply to its claim. However, inasmuch as that decision was predicated upon the Federal priority statute, it is apparent that it is not determinative of the issue herein, where there is no such priority statute applicable to claims of the State agency.

It is noteworthy, moreover, that there was a vigorous dissenting opinion in the *Harrison case,* wherein it was contended that the claim of the Federal government against the decedent's estate was subject to this provision of the Probate Act to the same extent as it was subject to other nondiscriminatory substantive laws of the State, and to the same extent as the State itself. The dissenting opinion thereupon cited *People* v. *Small*, 319 Ill. 437, where the court held the claim for an accounting filed by the State of Illinois against the decedent's estate subject to the terms of section 70 of the Administration Act (section 204 of the Probate Act,) and stated that inasmuch as the claim was filed after the expiration of the designated period, the claim, though not barred, was limited to property "not inventoried by decedent's personal representative."

From the foregoing analysis, it appears that although section 204 of the Probate Act is similar in a limited aspect to a statute of limitations in that claims filed after the 9-month period following the issuance of letters of administration may not be satisfied out of assets inventoried within that period, and has consequently been loosely referred to as a statute of limitations in some of the early cases, nevertheless, the courts have uniformly recognized that this section does not totally bar claims, as do general statutes of limitations, and that even if the claim is filed after the statutory period, it may be asserted against after-discovered assets, (*People* v. *Small*, 319 Ill. 437; *Pufahl*

v. *Estate of Parks,* 299 U.S. 217;) or heirs and distributees of the estate, (*Syndacker* v. *Swan Land and Cattle Co.* 154 Ill. 220; *Durflinger* v. *Arnold,* 329 Ill. 93;) or other security. (*Waughop* v. *Bartlett,* 165 Ill. 124.) Hence, this section of the Probate Act has been properly distinguished from a general statute of limitations, and may be deemed comparable to other substantive rules of law which are equally applicable to the State as to private individuals. The immunity of the State to general statutes of limitations when public rights are asserted is a vestige of the concept of sovereign immunity, and is designed to protect the enforcement of public rights in the conduct of governmental affairs, (34 Am. Jur. 307-309,) and this principle neither should, nor need be, extended to other types of statutes which do not totally bar claims.

Notwithstanding any purported analogies between section 204 of the Probate Act and general statutes of limitations, it appears that the *ratio decidendi* of *People* v. *Small,* 319 Ill. 437, conclusively determines this issue adversely to the commission's contention. Although the court did not discuss whether section 70 of the Administration Act was a statute of limitations, or whether the State's claim involved the assertion of a public right, nevertheless, as hereinbefore noted, the court held the State's claim for an accounting for the conversion of public money, presented on behalf of all the people, subject to the terms of this section of the Probate Act. We find no justification for overruling this case. Hence, it is our judgment that the claim of the Illinois Public Aid Commission, pursuant to section 5-4 of the Public Assistance Code, could be asserted against inventoried assets of the estate only if it were filed within nine months after the issuance of letters of administration.

In the instant case, the letters of administration for the estate were issued on June 28, 1949. On September 13, 1950, the probate court of Cook County issue a *nunc pro*

*tunc* order giving the commission leave to file the claim as of November 17, 1949, on the ground that it had originally been filed on that date but was inadvertently lost through no fault of the commission. The executor challenged the propriety of this order on the ground that the court had no jurisdiction to enter a *nunc pro tunc* order, since no proceedings were pending, and that, furthermore, the evidence was insufficient to support an order for the restoration of a lost claim.

A *nunc pro tunc* order has been defined as "an entry now for something previously done, made to make the record speak now what was actually done then." (28 Words and Phrases, 982 *et seq.*) It is a device to supply an omission to enter of record an order actually made, but omitted from the record by the clerk. *Sherman* v. *Green,* 152 Ill. App. 166.

The executor's assertion that the function of a *nunc pro tunc* order is not to create something in the record, or supply an omission to make an order, but only an omission in the record of the order, (*Briggs* v. *Briggs,* 299 Ill. App. 577,) is undoubtedly a correct statement of the law; however, the device was utilized herein, not to supply a new claim, but to correct the record by supplying an allegedly lost probate claim which had previously been filed.

Courts of record have inherent power to restore or substitute papers, files and records which have been lost or destroyed. (*Hickey* v. *Hickey,* 295 Ill. App. 67; *Blakemore* v. *Wilson,* 61 Ill. App. 454; *Goetz* v. *Koehler,* 20 Ill. App. 233, 34 Am. Jur. 605.) Section 47 of the Civil Practice Act, and section 1 of the act for restoring court records (Ill. Rev. Stat. 1949, chap. 116, par. 1,) specifically authorize the restoration of lost pleadings, or any part of a court record at the discretion of the court, and prescribe the procedure therefor, with the provision that the restored record will "have the same effect as such original record would have had." The salient inquiry, therefore, is not

whether the court had jurisdiction, but whether the original record actually existed and was lost. *Roberts* v. *Perrine*, 247 Ill. App. 259.

In *Blakemore* v. *Wilson*, 61 Ill. App. 454, where application was made to restore allegedly lost records, the court, in denying that it was without jurisdiction, stated: "There seems to be no doubt that the court had jurisdiction to hear and determine the question involved. The power to restore its lost records is inherent in every court of general jurisdiction. (*Goetz* v. *Koehler*, 20 Ill. App. 233; *Fisher* v. *Sievres*, 65 Ill. 99.) Power was also conferred on the court by the act to provide for the restoration of court records which have been lost or destroyed. * * * The restoration of a record that once existed, but is now lost or destroyed, is not an amendment or alteration of a record, and should not be confounded with such an amendment. Appellant had a right to the judgment of the court on the question whether the record had existed and been lost or destroyed, and if so what the substance of it was, and it was error to refuse to act on account of a supposed want of jurisdiction."

It is immaterial whether the lost record was an initial pleading, or an appearance, or an entire record. In *Williams* v. *Norton*, 135 Ill. App. 112, the court stated that a tort declaration could properly be supplied by a copy in lieu of the lost original if proper notice had been given, and in *Hickey* v. *Hickey*, 295 Ill. App. 67, the court allowed proof of the entire record of a guardian's sale of real estate and the order approving the sale, all of which were allegedly filed and then lost, even though the court record was entirely silent thereon.

With reference to the character of the proof necessary to restore a lost record the court stated in the *Hickey case*: "In no case do we find a positive rule of law requiring that a memo or minute be available upon which to restore a lost pleading or paper. * * * The appellant is entitled to

the judgment of a court or a jury as to whether or not she has sufficient proof upon which to base an order restoring the lost files."

Admittedly, the court must proceed cautiously in any such proceeding to restore lost records. (54 C. J., 640.) In the instant case, in support of the assertion that the probate claim was in fact filed on November 17, 1949, and thereafter lost ·or misplaced by the clerk's office, the commission offered first the testimony of the Assistant Attorney General who personally filed the claim with the clerk of the probate court. His positive and uncontradicted testimony is corroborated by a letter sent by the commission the same day as the claim was filed, and admittedly received by the attorney for the estate, in which he was notified of the filing of the claim, by the acknowledgment of the receipt of a copy of the claim by the attorney for the estate, and by the docket and office records of the Attorney General's office of the State.

It is apparent that this evidence could properly be deemed sufficient to support a finding by the court that the claim was, in fact, filed on November 17, 1949, and therefore warranted restoration as a lost pleading by the device of a *nunc pro tunc* order.

The facts herein are clearly distinguishable from the case relied upon by the executor where a *nunc pro tunc* order restoring a purported order of the court was predicated merely upon the personal recollection of the judge, and, therefore, held improper. *Stein* v. *Meyers*, 253 Ill. 199.

Moreover, the validity of the *nunc pro tunc* order herein is not affected by the failure of the issuance of a summons, inasmuch as the presentation of the claim itself confers jurisdiction of the subject matter upon the court, and the summons merely notifies the administrator or executor that the claim has been presented, and gives the court jurisdiction of his person. (*Wallace* v. *Gatchell*, 106 Ill. 315.) The failure of the issuance of the summons

constituted, at most, an evidentiary fact as to whether the claim had been filed.

It is our judgment, therefore, that the *nunc pro tunc* order of the probate court, affirmed by the circuit court, allowing the claim to be filed as a lost record, as of the original date it was filed, was proper, and that inasmuch as this claim was filed within nine months after the issuance of letters testamentary to the executor, the further order of the circuit court that the claim could be allowed against the inventoried assets of the estate is in accordance with the terms and provisions of section 204 of the Probate Act, and is affirmed.

*Order affirmed.*