Lawrence L. LANDRY, Philip M. Grace
and Lawrence G. Martin, Liquidating
Trustees, Plaintiffs,

v.

KEENE CORPORATION, Defendants.

No. 91 C 2917.

United States District Court,
N.D. Illinois, E.D.

Jan. 19, 1993.

**368**

Alfred B. Adams, III, Regina Benton Reid, Holly J.W. Huart, Branch, Pike, Ganz & O'Callaghan, Atlanta, GA, Carrie A. Durkin, Wilson & McIlvaine, Chicago, IL, for plaintiffs.

James R. Clune, Harry G. Sachrison, Sweeney & Riman, Ltd., Chicago, IL, Thomas H. Sear, Anderson, Kill, Olick & Oshinsky, P.C., New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

LINDBERG, District Judge.

Plaintiffs, Lawrence L. Landry, Philip M. Grace and Lawrence G. Martin, as liquidating trustees for the John D. and Catherine T. MacArthur Foundation ("Foundation"), have filed an asbestos property damage or "abatement" action against defendant Keene Corporation ("Keene") for asbestos-containing fireproofing installed in the building at the time of its construction. Keene has filed a motion to dismiss and a motion for summary judgment.

Pursuant to the MacArthur Liquidating Trust Agreement, the liquidating trustees own the former Eastern Airlines Reservations Building located at 800 Commerce Drive in Oak Brook, Illinois. Eastern Airlines designed and constructed the building in 1968. The specifications provided that the building was to be fireproofed with a mix of inorganic virgin chrysotile asbestos fibers and white mineral fiber. The fireproofing was purchased from defendant's predecessor corporation, Baldwin–Ehret–Hill Corp, and installed in 1969 by subcontractor, Wilkin Insulation Co. The subcontractor sprayed the asbestos-containing fireproofing onto the structural framework of the second floor in accordance with building specifications.

In March of 1972, Eastern conveyed title to the building to Bankers Life and Casualty Co. ("Bankers") in a sale/leaseback transaction. Eastern's lease provided that the airline retained the responsibility to "maintain, repair, or rebuild, or remake alterations, replacements, or renewals of any nature to the leased Premises."

John MacArthur was the sole shareholder of Bankers. After MacArthur died in January of 1978, the Foundation became the sole shareholder. Bankers subsequently conveyed the building in trust to the Foundation in 1984. Eastern continued as lessee under the lease until September 26, 1990 when the lease was terminated during Eastern's bankruptcy proceedings. Throughout the duration of Eastern's lease, neither Bankers nor the Foundation trustees were involved in the maintenance or repair of the building.

Bankers also conveyed the Gulf & Western building to the Foundation in 1984, along with documents which outlined the multimillion dollar problem of removing the building's asbestos-containing fireproofing. Plaintiff Lawrence Martin ("Martin") was Bankers' vice-president of real estate and had general supervisory authority over the Gulf & Western building. By letter dated March 2, 1982, Lehrer/McGovern, Inc. sent a proposal for renovation of the Gulf & Western building to Phil O'Conner, a Bankers' employee who reported directly to Martin. The proposal provided that if the asbestos fireproofing exceeded certain quantities, it would have to be removed according to certain procedures at a cost of $1,400,000. By memo dated March 3, 1982, Martin was informed that the current estimate for removing the asbestos fireproofing was $1,900,000. Another proposal for structural work on the Gulf & Western building dated April 1, 1983 listed three

options, each of which called for asbestos removal in compliance with the latest EPA methods at costs ranging up to $900,000.

In March of 1983, Martin requested approval for installation of a sprinkler system in the Gulf & Western building at a cost of $1,401,250. By memo dated January 10, 1983, Martin was informed that a tenant was testing the asbestos-containing fireproofing and that this "may result in a confrontation between us and [the tenants] where they will demand that we do the installation at night because of the safety factor of the employees."

On January 16, 1984, Bankers' employee Michael Curtis, who reported to O'Conner, signed a $685.25 check requisition form for air sampling the Gulf & Western building for asbestos. Curtis testified that he was informed the tests were conducted to try and calm tenants' fears over the presence of asbestos-containing products in the building.

Martin and Curtis were subsequently hired by the Foundation because of their familiarity with the Eastern building, the Gulf & Western building and other properties conveyed by Bankers to the Foundation. The Foundation discovered that the Eastern building contained asbestos during a tour given to representatives of the Foundation in January of 1987 or 1988. The information was elicited from Eastern in response to specific questions by Curtis.

Eastern discovered that the building's fireproofing contained asbestos in 1984 when it was planning to replace the roof. The presence of extensive amounts of asbestos-fireproofing materials in the building was confirmed in an asbestos assessment study conducted by Hygienetics, Inc. Eastern hired Hygienetics to perform the study to determine how the presence of asbestos would affect its attempt to market the building's lease. The Foundation did not receive a copy of the study until late 1990.

Plaintiffs commenced this action on May 14, 1991 to recover for existing property damage to the building caused by the presence of the asbestos as well as damages to be sustained from asbestos removal. De-

fendant subsequently filed a motion to dismiss and a motion for summary judgment.

### Discussion

In resolving a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must accept as true all well-pleaded allegations of fact and draw all inferences in the light most favorable to plaintiffs. *Martin v. Youngstown Sheet & Tube Co.*, 911 F.2d 1239, 1241 (7th Cir. 1990). A complaint should not be dismissed for failure to state a claim unless it is beyond doubt that plaintiffs could prove no set of facts which would entitle them to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

Rule 12(b)(6) provides that "if matters outside the pleadings are presented to and not excluded by the court, the motion [to dismiss] shall be treated as one for summary judgment pursuant to Rule 56." Under Rule 56(c), summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FRCP 56(c). Once the moving party shows that there are no genuine issues of material fact, the burden of proof shifts to the nonmoving party to designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To defeat a motion for summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [the] element[s] essential to that party's case." *Id.* at 322, 106 S.Ct. at 2552.

Defendant contends that plaintiffs' complaint should be dismissed pursuant to the Illinois construction statute of repose. The construction statute of repose, section 13–214(b) of the Illinois Code of Civil Procedure, provides that:

No action based upon tort, contract or otherwise may be brought against any

person for an action or omission of such person in the design, planning, supervision, observation or management of construction, or construction of an improvement to real property after 10 years have elapsed from the time of such act or omission. However, any person who discovers such act or omission prior to expiration of 10 years from such act or omission shall in no event have less than 4 years to bring an action as provided in subsection (a) of this Section. [Subsection (a) provides that such action shall be commenced within 4 years from the time the person bringing an action knew or should reasonably have known of such act or omission.]

Ill.Rev.Stat. ch. 110, ¶ 13–214(b).

The construction statute of repose bars any claim brought more than ten years after an act or omission "in the design, planning, supervision, observation or management of construction, or in the construction of an improvement to real property." However, if the claim is discovered prior to the expiration of the ten year period, plaintiffs have another four years to bring their action. At most, plaintiffs have fourteen years in which to file suit. Because section 13–214(b) is a statute of repose, the mere passage of time triggers its application and can bar an action before it is discovered or accrues. See *Thornton v. Mono Manufacturing Co.*, 99 Ill.App.3d 722, 54 Ill.Dec. 657, 425 N.E.2d 522, 525 (2d Dist.1981).

· Defendant contends that as a manufacturer of fireproofing material, any claims brought against it for acts or omissions in the design and manufacture of fireproofing material are covered by the construction statute of repose. Defendant cites *Signode Corp. v. Normandale Properties, Inc.*, 177 Ill.App.3d 526, 126 Ill.Dec. 797, 532 N.E.2d 482 (1st Dist.1988) and *St. Louis v. Rockwell Graphic Systems*, 220 Ill.App.3d 704, 163 Ill.Dec. 142, 145, 581 N.E.2d 93, 96 (1st Dist.1991) in support of its argument. Because plaintiffs' claims were at least twenty-two years old when the lawsuit was filed, defendant argues that plaintiffs' claims are time barred under the Illinois construction statute of repose.

In *Signode, supra*, an insurer brought a subrogation action against a landlord and general contractor to recover monies paid to the insured tenant when the roof of his office building collapsed approximately one month after the construction was substantially completed. Plaintiff alleged that the defendant general contractor failed to properly design and manufacture the building's bar joists and roofing members in accordance with building plans and specifications. *Id.* 126 Ill.Dec. at 800–01, 532 N.E.2d at 485–86. The trial court dismissed the claim against the general contractor under section 13–214, the construction statute of limitations, as plaintiff had brought suit more than four and a half years after the collapse of the roof. Plaintiff argued that the five year statute of limitations of section 13–205 was applicable as the original construction was completed and subsequent negligent work had caused the roof's collapse.

In affirming the trial court's dismissal, the appellate court determined that the work performed by the general contractor after plaintiff took possession of the building and before the roof collapsed was a continuation of the original construction. Therefore, section 13–214 was applicable and barred plaintiff's claim.

In *St. Louis, supra*, a newspaper printing press crushed the arm of a newspaper employee in an accident twelve years after the press was installed. Defendant Rockwell Graphic Systems designed and manufactured an offset printing press for the newspaper and assisted in installing the press as part of the newspaper's plant expansion. Defendant Skidmore & Mason was the general contractor for the expansion project and furnished the materials and services for installing the press and appurtenant structures. The trial court determined that plaintiff's claims were time barred under the construction statute of repose as defendants had constructed an improvement to real property and the incident had occurred more than ten years after the construction.

Plaintiff argued that the printing press lacked a sufficiently permanent nexus to the real property to be considered an improvement to real property. The appellate court rejected plaintiff's argument and explained that a product could constitute an improvement under certain circumstances. The court noted that the relevant inquiry should concentrate on the entire system and not a component of the system.

In applying *Signode* and *St. Louis* to the facts of this case, *Signode* fails to support defendant's contention that the construction statute of repose applies to product manufacturers. The construction statute of repose applies to persons engaged in the design, planning, supervision, observation or management of construction or to persons engaged in the construction of an improvement to real property. The *Signode* court affirmed the trial court's dismissal under section 13–214 because the general contractor designed and supervised the construction of the roof, not because the contractor supplied building materials.

While *St. Louis* does lend support to plaintiffs' argument that a product may be considered an improvement to real property in some circumstances, those circumstances are not present in this case. In *St. Louis*, Rockwell specifically designed and manufactured an offset printing press for a newspaper and was further involved in the installation of the press. Installation of the press was as much a part of the construction of the plant as the plant itself. The press was an integral part of the plant expansion project and constituted an improvement to real property.

In this case, defendant's fireproofing material was not specifically designed and manufactured for the Eastern Airlines Reservations Building. Defendant merely supplied a product which could have been used in any building. The fireproofing material was not integral to the functioning of the reservations center. Because the product was not an integral part of a system, it cannot be considered an improvement to real property. Even if it were such an improvement, Keene was not involved in the installation of the product. The act of supplying fireproofing material does not amount to constructing an improvement to real property.[1]

While the court agrees with defendant that application of the construction statute of repose depends on defendant's "activity," Keene's role in manufacturing and supplying fireproofing material do not fall within any of the statute's specifically enumerated activities. See *People ex rel. Skinner v. Hellmuth, Obata & Kassabaum, Inc.*, 114 Ill.2d 252, 102 Ill.Dec. 412, 500 N.E.2d 34 (1986). Keene was not engaged in the design, planning, supervision, observation or management of the construction of the Eastern building. Keene also was not engaged in the construction of an improvement to the building. Section 13–214(b) is therefore inapplicable.

■ The following statutes of repose, however, are applicable to plaintiffs' claims. Plaintiffs' strict liability claim, count I, is barred by the product liability statute of repose. Section 13–213(b) of the Illinois Code of Civil Procedure provides:

Subject to the provisions of subsections (c) and (d) no product liability action based on the doctrine of strict liability in tort shall be commenced except within the applicable limitations period and, in any event, within 12 years from the date of first sale, lease or delivery of possession by a seller or 10 years from the date of first sale, lease or delivery of possession to its initial user, consumer, or other non-seller, whichever period expires earlier, of any product unit that is claimed to have injured or damaged the plaintiff, unless the defendant expressly has warranted or promised the product for a

---

**1.** While working on defendant's motions, the court discovered that the Illinois Supreme Court vacated the judgments of the trial court and the appellate court in *St. Louis v. Rockwell Graphic Systems, Inc.,* 153 Ill.2d 1, 178 Ill.Dec. 761, 763, 605 N.E.2d 555, 557 (1992). The Illinois Supreme Court held that the record was insuffi-

cient to determine whether the printing press constituted an improvement to real property and remanded the case to the trial court for further proceedings. This further supports the court's determination that the *St. Louis* case is inapplicable to the facts of this case.

longer period and the action is brought within that period.

Ill.Rev.Stat. ch. 110, ¶ 13–213(b). Section 13–213(d) provides in part:

[I]f the injury complained of occurs within any of the periods provided by subsection (b) and paragraph (2) of subsection (c), plaintiff may bring an action within 2 years after the date on which the claimant knew, or through the use of reasonable diligence should have known, of the existence of the personal injury, death or property damage, but in no event shall such action be brought more than 8 years after the date on which such personal injury, death or property damage occurred.

Ill.Rev.Stat. ch. 110, ¶ 13–213(d). The product liability statute of repose bars any claim brought more than twelve years after the manufacturer's sale of the allegedly defective product. Pursuant to section 13–213(d), the period of repose may be extended up to eight years for injuries occurring within the twelve year period if plaintiffs sue within two years of discovering their injury. Under any facts, the maximum time plaintiffs have to file a products liability action sounding in strict liability in tort is twenty years after the sale. Because plaintiffs filed suit in 1991, twenty-two years after the sale of the fireproofing material in 1969, plaintiffs' claim is barred by the product liability statute of repose.

■■■ Plaintiffs have further pled no facts to establish fraudulent concealment to toll the product liability statute of repose. Section 13–215 of the Illinois Code of Civil Procedure provides:

If a person liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within 5 years after the person entitled to bring the same discovers that he or she has such cause of action, and not afterwards.

Ill.Rev.Stat. ch. 110, ¶ 13–215. To plead fraudulent concealment, plaintiffs must allege that defendant made affirmative acts or representations which were calculated to prevent and did in fact prevent the discov-

ery of the cause of action. *Zagar v. Health and Hospitals Governing Comm'n of Cook County*, 83 Ill.App.3d 894, 39 Ill. Dec. 112, 116, 404 N.E.2d 496, 500 (1st Dist.1980); *Curry v. A.H. Robins Co.*, 775 F.2d 212, 217–18 (7th Cir.1985). Mere silence by defendant and failure by plaintiffs to discover the action are insufficient. *Zagar* at 500. Even if this standard is met, section 13–215 does not apply if plaintiffs would have discovered the action with ordinary diligence. *Id.* 39 Ill.Dec. at 116, 404 N.E.2d at 500.

Plaintiffs contend they have adequately pled fraudulent concealment in paragraph 18 of their complaint. Paragraph 18 alleges as follows:

A. Said defendant or defendants ignored or failed to act upon available medical and scientific data indicating the dangerousness of asbestos-containing products like the one in suit;

B. Said defendant or defendants failed to test or to adequately test for the dangerousness of the sprayed-on asbestos fireproofing in suit;

C. Said defendant or defendants obscured medical and scientific data as to the link between asbestos and disease processes;

D. Said defendant or defendants failed to warn the user or consumer of the sprayed-on asbestos fireproofing of the health hazards associated with said product;

E. Said defendant or defendants failed to suggest to the user or consumers of sprayed-on asbestos fireproofing alternative, non-asbestos products for fireproofing the Building;

F. Said defendant or defendants failed to substitute for asbestos as a constituent or component of the sprayed-on fireproofing a constituent or component that would not have had the harmful effects caused by asbestos.

Except for paragraph 18(C) of the complaint, plaintiffs have pled no affirmative acts or representations by defendant. Paragraphs 18(A), (B), (D), (E) and (F) set forth omissions; each paragraph begins with "[s]aid defendant or defendants failed

to...." While paragraph 18(C) may constitute an affirmative act by defendant, plaintiffs have failed to allege that this act was calculated to prevent and actually did prevent the discovery of plaintiffs' cause of action. In any event, this is a property damage action. Nothing in paragraph 18(C), which alleges that defendant obscured medical and scientific data as to the link between asbestos and disease processes, can be construed to have prevented plaintiffs from learning that the Eastern building contained asbestos. Plaintiffs have pled no facts establishing fraudulent concealment. The product liability statute of repose is not tolled.

■ Plaintiffs' negligence claim, count II, is governed by the five year statute of limitations of Section 13–205 of the Illinois Code of Civil Procedure. Section 13–205 provides:

[A]ctions on unwritten contracts, expressed or implied, or on awards of arbitration, or to recover damages for an injury done to property, real or personal, or to recover the possession of personal property or damages for the detention or conversion thereof, and all civil actions not otherwise provided for, shall be commenced within 5 years next after the cause of action accrued.

Ill.Rev.Stat. ch. 110, ¶ 13–205. Section 13–205 is the catch-all statute of limitations for property damage in "all civil actions not otherwise provided for." *Calumet Country Club v. Roberts Environmental Control Corp.*, 136 Ill.App.3d 610, 91 Ill.Dec. 267, 269, 271, 483 N.E.2d 613, 615 (1st Dist.1985). If applicable, specific statutory provisions such as section 13–214, the construction statute of limitations and the construction statute of repose, take precedence over the general limitations period of section 13–205. *Calumet*, 91 Ill.Dec. at 271, 483 N.E.2d at 615. However, because the court has determined that the construction statute of repose is not applicable, section 13–205 is the proper statute to be applied.

■ Section 13–205 provides that an action must be brought within five years after the cause of action accrued. The Illinois Supreme Court has held that a cause of action accrues when a party knows or reasonably should know both that an injury has occurred and that it was wrongfully caused. *Nolan v. Johns–Manville Asbestos*, 85 Ill.2d 161, 52 Ill.Dec. 1, 5, 421 N.E.2d 864, 868 (1981). Once this standard is met, the statute begins to run and the party is under an obligation to inquire further to determine whether an actionable wrong was committed. *Id.* 52 Ill.Dec. at 5, 421 N.E.2d at 868.

At the time Bankers conveyed the Eastern building to the Foundation in 1984, Bankers also conveyed the Gulf & Western building to the Foundation along with documentation detailing the existence of asbestos-containing fireproofing in the Gulf & Western building, tenants' concerns over the presence of asbestos and proposals for asbestos removal. The Foundation also hired Bankers' vice-president of real estate, Martin, and his associate, Curtis, both of whom were familiar with Gulf & Western's asbestos problems. Given this documentation and the expertise of Martin and Curtis, the question is whether plaintiffs knew or should have known by 1984 that the Eastern building also contained asbestos. Defendant contends that this knowledge should have put plaintiffs on notice that the Eastern building might contain asbestos and that they were under a duty to investigate further. Plaintiffs need only have contacted Eastern or checked the building specifications, according to defendant, to determine whether the Eastern building contained asbestos. Because plaintiffs filed suit in 1991, more than five years after their action allegedly accrued in 1984, defendant contends that plaintiffs' negligence claim is time-barred.

Defendant's argument misapplies the discovery rule by arguing that plaintiffs had a "duty to investigate" whether or not they were injured. Under Illinois law, the obligation to investigate does not arise until after plaintiffs knew or reasonably should have known that an injury occurred and that it was wrongfully caused. The purpose of the investigation is to determine whether the injury is actionable. Here, plaintiffs did not learn that the Eastern

building contained asbestos until a tour of the facility in January of 1987 or 1988. Thus, the duty to investigate whether the contamination was actionable arose after the injury was discovered. Plaintiffs' knowledge of Gulf & Western's asbestos problems may have reduced the amount of investigation necessary to determine whether an actionable wrong was committed, but it did not require plaintiffs to investigate whether the Eastern building and other buildings owned by plaintiffs were contaminated for statute of limitations purposes. Because the negligence action accrued in 1987 or 1988, plaintiffs' claim was timely filed within the five year limitations period set forth in section 13–205. Defendant's motion for summary judgment on plaintiffs' negligence claim is denied.

 Plaintiffs have failed to plead an action for negligent misrepresentation, count IV. To plead a claim for negligent misrepresentation, plaintiffs must allege that a false statement was made to them upon which they justifiably relied to their detriment. *Board of Education City of Chicago v. A, C and S, Inc.*, 131 Ill.2d 428, 137 Ill.Dec. 635, 646, 546 N.E.2d 580, 591 (1989). Plaintiffs have not pled that defendant made a false statement, much less a representation of any kind, to plaintiffs at the time of the sale of the fireproofing. Plaintiffs have alleged that Keene and its alleged predecessor never dealt with plaintiffs concerning the fireproofing material in the Eastern Airlines building. (Complaint at ¶ 6.) When the Eastern Airlines building was constructed in 1968, plaintiffs did not own the building and therefore Keene and its predecessor company could not have made any statements to plaintiffs regarding the fireproofing. Since defendants made no statements to plaintiffs upon which they could have justifiably relied, no claim for negligent misrepresentation can be pled.

ORDERED: Defendant's motion to dismiss plaintiffs' strict liability and negligent misrepresentation claims is granted. Defendant's motion for summary judgment on plaintiffs' negligence claim is denied.