THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. ASBESTOSPRAY CORPORATION *et al.*, Defendants-Appellees.

Fourth District   No. 4—92—0441

Argued April 13, 1993.—Opinion filed July 8, 1993.

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan, Solicitor General (argued), and Shawn W. Denney, Alison E. O'Hara, and Marilyn A. Kueper, Assistant Attorneys General, of Chicago, of counsel), for the People.

Howard C. Emmerman (argued) and Jeffrey S. Johnston, both of Katz, Randall & Weinberg, of Chicago, for appellee Asbestospray Corporation.

Harry G. Sachrison, Jr., and Andrew R. Makauskas, both of Sweeney & Riman, Ltd., of Chicago, for appellee Keene Corporation.

PRESIDING JUSTICE STEIGMANN delivered the opinion of the court:

In October 1991, the trial court dismissed the State's action for damages against two foreign corporations based on the time bar of section 13—213(b) of the Code of Civil Procedure (Code) and the time bar and substantive provisions of section 13—214(b) of the Code. (Ill. Rev. Stat. 1989, ch. 110, pars. 13—213(b), 13—214(b).) The State appeals, arguing that the trial court erred in concluding (1) the State was not immune from the "repose" provisions contained in those sections of the Code, and (2) an asbestos manufacturer was entitled to the protections of section 13—214(b) of the Code. We reverse and remand.

On October 19, 1990, the State filed a five-count complaint against defendants Asbestospray Corporation (Asbestospray) and Keene Corporation (Keene), manufacturers of asbestos-containing products used in the 1969 through 1970 construction of a public building housing the offices of the Illinois Attorney General in Springfield. The complaint recited claims for negligence, strict product liability, wilful and wanton misconduct, negligent misrepresentation and conspiracy and sought damages incurred in an asbestos-abatement program undertaken in that building.

Pursuant to motions filed by defendants and the State's election to stand on its complaint, the circuit court dismissed the State's complaint as untimely pursuant to sections 13—214(b) and 13—213(b) of the Code, finding (1) the repose provisions of section 13—213(b) of the Code constitute substantive law applicable equally to public bodies and to private individuals from which the State was not immune (citing *In*

*re Estate of Bird* (1951), 410 Ill. 390, 397, 102 N.E.2d 329, 333); (2) the repose provisions of the "construction" statute, section 13—214(b) of the Code, expressly applied to the State to bar its cause of action; and (3) the protections of section 13—214(b) extended to defendant Keene's manufacture of asbestos (citing *Signode Corp. v. Normandale Properties, Inc.* (1988), 177 Ill. App. 3d 526, 531, 532 N.E.2d 482, 485-86). The State's subsequent motion for reconsideration was denied on April 22, 1992.

The State first argues that the trial court erred in dismissing its complaint as untimely because the State retained a common law exemption from the statutory time bar which might otherwise have defeated its cause of action against defendants. Section 13—213(b) of the Code imposes time limits for bringing an action based on product liability and reads as follows:

"(b) Subject to the provisions of subsections (c) and (d) no product liability action based on the doctrine of strict liability in tort shall be commenced except within the applicable limitations period and, in any event, within 12 years from the date of first sale, lease or delivery of possession by a seller or 10 years from the date of first sale, lease or delivery of possession to its initial user, consumer, or other non-seller, whichever period expires earlier ***." Ill. Rev. Stat. 1989, ch. 110, par. 13—213(b).

The State argues that the common law maxim of *nullum tempus occurrit regi* (*nullum tempus*) exempts the State from the operation of a statute of limitations, unless by its terms the statute expressly includes the State, county, municipality, or other governmental agency. (*Clare v. Bell* (1941), 378 Ill. 128, 130-31, 37 N.E.2d 812, 814.) Historically, the *nullum tempus* doctrine emerged from concepts of sovereign power and prerogative. "The common law fixed no time as to the bringing of actions. Limitations derive their authority from statutes. The king was held never to be included, unless expressly named." (*United States v. Thompson* (1878), 98 U.S. 486, 489, 25 L. Ed. 194, 195; see also *Division of Old Age Assistance v. Lyman* (1939), 373 Ill. 27, 30, 25 N.E.2d 49, 50 (rights of the sovereign are never impaired absent a statutory provision clearly manifesting a legislative intent to abdicate the sovereign prerogative).) In modern law the continued viability of the doctrine is supported by policy judgments that the public should not suffer as a result of the negligence of its officers and agents in failing to promptly assert causes of action which belong to the public. See *Board of Education v. A, C & S, Inc.* (1989), 131 Ill. 2d 428, 472, 546 N.E.2d 580, 600-01; *City of Shelby-*

*ville v. Shelbyville Restorium, Inc.* (1983), 96 Ill. 2d 457, 461, 451 N.E.2d 874, 876.

Defendants do not dispute the application of *nullum tempus* to "procedural" statutes of limitation but assert that section 13—213(b) includes a provision of repose which they characterize as "substantive" law which binds the State as well as private parties and from which the State can claim no exemption. In support of their position, defendants cite cases distinguishing the function of statutes of limitation from statutes of repose. (See *Highland v. Bracken* (1990), 202 Ill. App. 3d 625, 632, 560 N.E.2d 406, 411 ("A statute of repose is essentially different from a statute of limitations, in that a limitations statute is procedural, giving a time limit for bringing a cause of action, with the time beginning when the action has ripened or accrued; while a repose statute is a substantive statute, extinguishing any right of bringing the cause of action, regardless of whether it has accrued"); *Thornton v. Mono Manufacturing Co.* (1981), 99 Ill. App. 3d 722, 726, 425 N.E.2d 522, 525, quoting *Rosenberg v. Town of North Bergen* (1972), 61 N.J. 190, 199, 293 A.2d 662, 667 (" '[t]he function of the statute [of repose] is thus rather to define substantive rights than to alter or modify a remedy' ").) Neither of these cases supports the view that the State may not exercise its right of exemption from the operation of section 13—213(b) under *nullum tempus*.

■ The trial court relied on the "substantive" characterization given to the repose provision in *Thornton* and *dicta* extracted from *Bird* in concluding the State was not exempt from the repose provision of section 13—213(b) of the Code. The supreme court in *Bird* likened a probate nonclaim statute (which barred claims not filed within nine months of the opening of the estate) to "other substantive rules of law which are equally applicable to the State as to private individuals." (*Bird*, 410 Ill. at 397, 102 N.E.2d at 333.) A general statute of repose cannot be equated with the nonclaim probate statute enacted as part of a comprehensive probate code creating and circumscribing rights to claim against a decedent's estate and facilitating the expeditious administration of estates. The repose provision of section 13—213(b) cannot be equated to that recognized in *Bird*; the State's cause of action exists solely by virtue of the common law. The public policy underlying the concept of *nullum tempus* differs substantially from the public policy that underlies the repose provision in the probate code.

Moreover, in contrast to the trial court's finding, all substantive rules of law do not necessarily apply with equal force to the State and private parties. See, *e.g.*, Ill. Rev. Stat. 1991, ch. 127, par. 801 (with

certain exceptions, the State shall not be made a party or a defendant in any cause of action); *In re Special Education of Walker* (1989), 131 Ill. 2d 300, 307, 546 N.E.2d 520, 523 (State's immunity to the imposition of statutory post-judgment interest was not waived in the absence of language showing an explicit legislative intent to impose liability upon the State).

*A, C & S* involved consolidated actions by 34 public school districts against manufacturers and suppliers of asbestos-containing products for the cost of abatement of asbestos in those buildings. The trial court held the applicable statute of limitations barred all claims. In affirming the appellate court's reversal, the supreme court noted that section 13—213 of the Code contained no language expressly including governmental entities within the limitations set forth in the statute and, in the absence of a specific manifestation of such legislative intent, refused to read the statute so as to remove "the common law immunity" afforded governmental entities. (*A, C & S*, 131 Ill. 2d at 477, 546 N.E.2d at 603.) Although the supreme court did not distinguish the limitations and repose provisions of section 13—213 of the Code in finding the school districts exempt from the operation of the time bar, the court likely considered the repose provision because sales of the asbestos products used in the construction of the schools occurred as early as 1946, which would have triggered that portion of the statute.

Defendants have failed to persuade us that the State's immunity, successfully invoked in the school districts' product liability action for abatement of asbestos in *A, C & S*, should fail to protect public rights here merely because defendants invoke the repose provision of section 13—213(b) of the Code. (See *Bellevue School District No. 405 v. Brazier Construction Co.* (1984), 103 Wash. 2d 111, 118-20, 691 P.2d 178, 182-83 (a statute of repose creates no statutory rights as does a nonclaim statute and differs from a statute of limitations only by the point at which the limitations period begins to run); *Rowan County Board of Education v. United States Gypsum Co.* (1992), 332 N.C. 1, 14-16, 418 S.E.2d 648, 657-58 (despite the fact that statutes of repose differ in some respects from those of limitation, they are still time limitations and therefore still subject to the doctrine that time does not run against the sovereign); but see *Commonwealth v. Owens-Corning Fiberglas Corp.* (1989), 238 Va. 595, 600, 385 S.E.2d 865, 868 (constitutionally protected "substantive rights of repose" accrued to the potential defendants and the common law rule of *nullum tempus* did not exempt the State from the provisions of the statute).) We

hold that the repose provision of section 13—213(b) of the Code does not bar the State from proceeding with its cause of action.

Defendants next argue that the provisions of section 13—214(b) of the Code (the construction statute) operate to bar the State's cause of action on two grounds: (1) the State is expressly included within the provision of repose; and (2) the asbestos-containing materials incorporated into the Attorney General's building constitute an improvement to real property within the meaning of section 13—214(b) of the Code. The relevant provisions of section 13—214 state the following:

> "As used in this Section 'person' means any individual, any business or legal entity, or *any body politic*.
> ***
>
> (b) No action based upon tort, contract or otherwise may be brought against any person for an act or omission of such person in the design, planning, supervision, observation or management of construction, or *construction of an improvement to real property* after 10 years have elapsed from the time of such act or omission." (Emphasis added.) Ill. Rev. Stat. 1989, ch. 110, par. 13—214.

■ Defendants assert that the reference to "any body politic" expressly includes the State of Illinois. The State argues that the use of general terms, such as "body politic," is an insufficiently express waiver of the State's common law protections under *nullum tempus*. The State cites *Dollar Savings Bank v. United States* (1873), 86 U.S. (19 Wall.) 227, 22 L. Ed. 80 (general words of inclusion such as "bodies politic" do not restrain State interests), and *Walker* (131 Ill. 2d at 304, 546 N.E.2d at 522 (the term "any other governmental entity" was not a "sufficiently clear" expression of the legislature's intent to waive the State's right to assent to the imposition of post-judgment interest)). We view *Walker* as limited to its facts, and we decline to adopt a century-old interpretation of a Federal statute in conflict with recent decisions in this State.

In *People ex rel. Skinner v. Hellmuth, Obata & Kassabaum, Inc.* (1985), 135 Ill. App. 3d 765, 768, 482 N.E.2d 155, 157, *rev'd on other grounds* (1986), 114 Ill. 2d 252, 500 N.E.2d 34, the court concluded that by use of the term "any body politic," the legislature intended to include the State of Illinois within the scope of section 13—214(a) of the Code (Ill. Rev. Stat. 1983, ch. 110, par. 13—214(a)). That court relied on *People v. Snyder* (1917), 279 Ill. 435, 440-41, 117 N.E. 119, 121-22, which considered a treatise's definition of "body politic" as denoting a politically organized, collective body of a nation or State (8 Corpus Juris 1137 (1916)), and concluded that the term, as used in section

104 of the Criminal Code (Ill. Rev. Stat. 1915-1916, ch. 38, par. 104 (Hurd)) included the State. See also *People ex rel. Skinner v. Graham* (1988), 170 Ill. App. 3d 417, 427-28, 524 N.E.2d 642, 647; *County of Du Page v. Graham, Anderson, Probst & White, Inc.* (1985), 109 Ill. 2d 143, 151, 485 N.E.2d 1076, 1079 (the term expressly includes "governmental entities, such as the county, within its purview").

Moreover, in *A, C & S*, the supreme court pointed to section 13—214 of the Code as an expression of the legislature's intent to include governmental entities within the purview of the statute. (*A, C & S*, 131 Ill. 2d at 477, 546 N.E.2d at 603.) We decline plaintiff's invitation to narrow the term "any body politic" and hold that the language of section 13—214(b) of the Code expressly includes the State and waives its common law exemption.

We next consider whether asbestos manufacturers such as the defendants fall within the provisions of section 13—214(b) of the Code for "construction of an improvement to real property." Citing *Signode* (177 Ill. App. 3d at 531, 532 N.E.2d at 485-86), the circuit court found that the benefits of section 13—214(b) of the Code extended to the defendants for failure to properly manufacture asbestos. The *Signode* court found that defendant's failure to "properly design or properly manufacture the bar joists and roofing members clearly falls within section 13—214." (*Signode*, 177 Ill. App. 3d at 531, 532 N.E.2d at 486.) One of the defendants in *Signode* was not a manufacturer (as are defendants in this case) but the general contractor hired by the property owner to construct a building. The contractor had attempted to improve the design of the roof, which subsequently collapsed. (*Signode*, 177 Ill. App. 3d at 528, 532 N.E.2d at 483-84.) The *Signode* court affirmed dismissal under section 13—214 of the Code because the general contractor designed and supervised construction of the improvement, not because the contractor supplied building materials. Therefore *Signode* is inapposite to the facts of this case.

In *People ex rel. Skinner v. Hellmuth, Obata & Kassabaum, Inc.* (1986), 114 Ill. 2d 252, 500 N.E.2d 34, the supreme court addressed a challenge to the constitutionality of section 13—214(a) of the Code (Ill. Rev. Stat. 1983, ch. 110, par. 13—214(a)) on the basis that it set an arbitrary classification among individuals entitled to its protections. In finding the statute constitutional, the court noted the language "protects, on its face, anyone who engages in the enumerated *activities.*" (Emphasis in original.) (*Hellmuth*, 114 Ill. 2d at 261, 500 N.E.2d at 37.) The court found the architect, general contractor and masonry subcontractor were protected by the limitations of section 13—214(a), but the insurer who issued a performance bond for the general con-

tractor could not be viewed as engaging in construction activities. *Hellmuth*, 114 Ill. 2d at 263, 500 N.E.2d at 38-39.

Other courts have determined that section 13—214 of the Code would not apply to a landowner where the action is founded solely on the defendant's status as landowner (*C.S. Johnson Co. v. Champaign National Bank* (1984), 126 Ill. App. 3d 508, 511, 467 N.E.2d 363, 365), but would apply to a landowner being sued for his own act or omission in one of the specified construction-related activities (*Lombard Co. v. Chicago Housing Authority* (1991), 221 Ill. App. 3d 730, 735, 587 N.E.2d 485, 489).

In *A, C & S* the trial court found that defendants' asbestos products were not a product for strict liability purposes because they constituted components and indivisible parts of the building. (*A, C & S*, 131 Ill. 2d at 451, 546 N.E.2d at 591.) In rejecting this finding, the supreme court stated the following:

> "The [asbestos products] involved in this case include acoustic plaster, acoustic tile, boiler insulation, pipe insulation, and spray-on fireproofing. The fact that these are used in construction and have been installed in a building does not detract from their nature as products separate from the actual structure. We cannot accept the defendant's argument that these [asbestos products] have become permanent fixtures upon real property, indistinguishable from the buildings themselves, and to do so would defeat the underlying policy reasons for imposing tort or recovery.
>
> Our holding is not influenced by the fact that these [asbestos products] performed the insulation or fireproofing purposes satisfactorily." *A, C & S*, 131 Ill. 2d at 451, 546 N.E.2d at 591.

In *McIntosh v. A & M Insulation Co.* (1993), 244 Ill. App. 3d 247, the plaintiff had alleged in its complaint that defendants were asbestos insulation subcontractors who installed asbestos products at a construction jobsite. In affirming the trial court's entry of summary judgment for defendants pursuant to section 13—214(b) of the Code, the court noted plaintiff failed to supply any facts or allegations which would support his theory that defendants were sellers or distributors (rather than installers) of the asbestos products. *McIntosh*, 244 Ill. App. 3d at 251.

■ Seeking to avoid application of the language "construction of" which precedes the clause "an improvement to real property" in section 13—214(b), defendants argue their products constitute an "improvement to real property," citing the appellate and supreme court decisions in *St. Louis v. Rockwell Graphic Systems, Inc.* (1991), 220

Ill. App. 3d 704, 581 N.E.2d 93, *vacated* (1992), 153 Ill. 2d 1, 605 N.E.2d 555. The issue in *St. Louis* was whether the manufacturer of a printing press installed during construction of a plant expansion was protected by the provisions of section 13—214(b) of the Code. The supreme court viewed the case as presenting two questions: (1) whether the printing press was an improvement to real property, and (2) if so, whether Rockwell, the company primarily responsible for its design and manufacture, fell within the scope of section 13—214(b). (*St. Louis*, 153 Ill. 2d at 3, 605 N.E.2d at 556.) Because the court found the record insufficient to determine whether the press was an improvement to real property, it did not address the second issue. (*St. Louis*, 153 Ill. 2d at 3, 605 N.E.2d at 556.) The court noted the absence of material evidence on the scope of the overall plant expansion project, the size, cost, or weight of the press, the method and manner of installation, and the building modifications necessary to accommodate it. (*St. Louis*, 153 Ill. 2d at 5, 605 N.E.2d at 557.) Given the two questions identified by the supreme court in *St. Louis*, even a preliminary finding that a product constitutes an "improvement" does not automatically bring the manufacturer within the purview of section 13—214(b). To be included within the statute, a manufacturer must perform some role related to the construction site beyond provision of standard products generally available to the public and not custom designed for the project. Were this not so, a manufacturer's exposure to liability for a defective product would rest solely on the fortuity of its incorporation in an "improvement to real property" or some form of personalty. There is no evidence of record that either Asbestospray or Keene had any role in the construction of the Attorney General's building other than provision of standard products. Accordingly, they may not claim the protections of section 13—214(b) of the Code.

The decision of the circuit court is reversed and the cause remanded for reinstatement of the State's cause of action and for further proceedings consistent with this opinion.

Reversed and remanded.

COOK and LUND, JJ., concur.